COMMONWEALTH *vs.* ALBION P. HILTON.

Essex.　March 20, 1899. — June 30, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Regulation of Town forbidding the taking of Clams without a Permit —*
*Constitutional Law.*

The selectmen of a town, acting under Pub. Sts. c. 91, § 68, as amended by St.
1889, c. 391, and under the vote of the town, have the power to make a regula-
tion forbidding the taking of clams without a permit, except for the purpose and
in the quantities authorized by the statute, and providing that permits shall be
granted only to inhabitants of the town; and the statute is constitutional.

COMPLAINT to the justices of the Second District Court of
Essex, alleging that the defendant, on November 21, 1898, at
Salisbury, " did take from their beds a certain quantity of shell
fish, to wit, five bushels of clams, he, the said Albion P. Hilton,
did not then and there take said shell fish for his own family use,
and he, the said Albion P. Hilton, did not then and there have
permit from the selectmen of said Salisbury to take said shell
fish, said selectmen being then and there duly instructed to con-
trol and regulate or prohibit the taking of said shell fish in said
Salisbury, by a vote of said Salisbury passed at a legal meeting
of said Salisbury duly called for that purpose, and held on
November 2, 1898, and said selectmen of said Salisbury having
thereafter, to wit, on the third day of said November, made
regulations prohibiting all persons from taking clams from the
flats of said Salisbury without a permit from the selectmen of
said Salisbury, against the peace of said Commonwealth and the
form of the statute in such case made and provided."

In the Superior Court, upon appeal, the case was submitted
to the jury on agreed facts. *Hardy*, J., refused to give certain
rulings requested and ruled that the agreed facts would warrant
a verdict of guilty.

The jury returned a verdict of guilty; and the defendant
alleged exceptions, which appear in the opinion.

*E. S. Spalding*, (*C. J. Stone & D. P. Page* with him,) for the
defendant.

*W. S. Peters*, District Attorney, for the Commonwealth, sub-
mitted the case on a brief.

KNOWLTON, J. At a legal meeting of the inhabitants of the town of Salisbury it was voted unanimously, under a proper article in the warrant, " that the selectmen be instructed to control or regulate, or prohibit the taking of eels, clams, quahogs, and scallops within the town, and make such regulations concerning the taking of eels and said shell fish as they may deem expedient." Subsequently, in accordance with this vote, the selectmen made a regulation " prohibiting all persons from digging clams on Salisbury Flats to sell, except those having a permit from the selectmen, the permit only to be granted to the residents of the town." The defendant dug clams in violation of this regulation, and was convicted of the offence in the Superior Court under the Pub. Sts. c. 91, § 68. The defendant asked the court to rule as follows : " That the regulation of the town of Salisbury is unconstitutional and void : First, because it· is in conflict with Sec. 2, Art. 4, of the Constitution of the United States, which provides that the citizens of each State shall be entitled to all the privileges and immunities of the citizens of the several States, and the by-law in question prevents citizens of States other than Massachusetts from availing themselves of the common right of fishery within the said town of Salisbury. Second, because the right of fisheries is a public right vested in the Commonwealth, and which, as trustee, the Commonwealth has no power to grant to the town. Third, because it abridges rights and privileges guaranteed under the law of the State, and no express grant of such right has been made by the State to the town. Fourth, because no authority, expressed or implied in the charter of said town, gives a right to pass such by-law. Fifth, because said by-law, which, under the pretence of regulating the fishery of clams within its limits, prohibits all persons except the inhabitants of the town from taking shell fish from a navigable river, is void as in contravention of a common right. Sixth, because it appears that the defendant and others have acquired a vested right in said fishery of which they cannot be deprived without compensation and due process of law. Seventh, . because the said regulation is in conflict with Art. 14, Sec. 1, of the Amendments of the Constitution of the United States, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of the citi-

zens of the United States, and said by-law abridges a common privilege of all citizens of the country, namely, the common right of fishery within said town of Salisbury. Eighth, that the said regulation of the town of Salisbury, so far as it prohibits inhabitants of other towns in the Commonwealth from the use of a common fishery within said town of Salisbury, is unconstitutional and void." To the refusal so to rule and to the ruling that the agreed facts would warrant a verdict of guilty the defendant excepted.

By the common law of England all the king's subjects had a common right of fishery in the sea and in all bays, coves, and arms of the sea where the tide ebbs and flows. The king, who holds the right of soil under tide water, holds the appurtenant right of fishery in trust for his subjects, and since Magna Charta he cannot by grant deprive them of it. These rights in America were granted in the colonial charters to be held for the benefit of the inhabitants, and when the colonies achieved their independence they remained in the several States, to be exercised for the common good. *Dill* v. *Wareham*, 7 Met. 438, 446. *Commonwealth* v. *Alger*, 7 Cush. 53, 82. *Weston* v. *Sampson*, 8 Cush. 347. *Martin* v. *Waddell*, 16 Pet. 367, 410, 432. *Pollard* v. *Hagan*, 3 How. 212. *Smith* v. *State*, 18 How. 71. *Manchester* v. *Massachusetts*, 139 U. S. 240. *Arnold* v. *Mundy*, 1 Halst. 1.

The rights of the States in the management and regulation of these fisheries is not limited like that of the crown in England. The States hold them in trust for the public; but they exercise not only the rights of sovereignty, except in those matters over which it is granted to the general government, but also the right of property as to everything which remains in common for all the people. In *Martin* v. *Waddell*, 16 Pet., at page 410, Chief Justice Taney says, " When the Revolution took place, the people of each State became themselves sovereign ; and in that character hold the absolute right to all their navigable waters and the soils under them for their own common use, subject only to the rights since surrendered by the Constitution to the general government. A grant made by their authority must therefore manifestly be tried and determined by different principles from those which apply to grants of the British crown, when the title is held by a single individual in trust for the

whole nation." So Chief Justice Shaw, in *Commonwealth* v. *Alger*, 7 Cush., at page 82, says that " the power of the Commonwealth, by the Legislature, over the sea, its shores, bays, and coves, and all tide waters, is not limited, like that of the crown at common law." It is now settled that the right of regulation and control of fisheries by the several States in the interest of the public permits in every State legislation that secures the benefits of this public right in property to its own inhabitants. The rights, immunities, and privileges which are secured by the Constitution of the United States to the inhabitants of the several States do not include in favor of the inhabitants of any State rights in the common property of the inhabitants of other States. *McCready* v. *Virginia*, 94 U. S. 391. *Wharton* v. *Wise*, 153 U. S. 155. *Corfield* v. *Coryell*, 4 Wash. C. C. 371. *Blake* v. *McClung*, 172 U. S. 239, 249. The numerous statutes in regard to fisheries which have been enacted from time to time in this Commonwealth are founded on this doctrine, and our decisions recognize it. The defendant's contention that the regulation in the present case is in conflict with the Constitution of the United States because it gives privileges to the inhabitants of Salisbury which are not given to citizens of other States is, therefore, without foundation.

The next question is whether the regulation is unconstitutional or otherwise invalid because it gives to inhabitants of Salisbury privileges in the fishery which are not given to inhabitants of other towns and cities in this State. The Pub. Sts. c. 91, § 68, as amended by St. 1889, c. 391, under which the regulation was made, expressly saves to every inhabitant of the Commonwealth a right to take, without a permit, eels and the shell fish mentioned, " for his own family use," and to take the shell fish for bait, not exceeding three bushels in any one day. The language of the statute is broad enough to authorize a regulation which prefers inhabitants of the town in issuing permits to take fish for sale. From the earliest times, in regulating common rights in fisheries, statutes have been passed which authorize a preference of inhabitants of the town in which the fishing place is situated. The Col. Laws (Whitmore's ed.), 90, 91, declared that " every inhabitant who is an householder, shall have free fishing and fowling in any great ponds, bays, coves and rivers, so far as the sea ebbs and flows within the precincts of

the town where they dwell, unless the freemen of the same town or the General Court have otherwise appropriated them." See also Sts. 1795, c. 71; 1838, c. 113; 1841, c. 64; 1844, c. 128; Rev. Sts. c. 55; Gen. Sts. c. 83; Pub. Sts. c. 91; Sts. 1889, c. 64; 1892, cc. 186, 188; 1893, cc. 55, 255; 1897, c. 289. The power of the Legislature in the public interest to determine the mode of using fisheries, even to the granting of exclusive rights of fishing to individuals, has been broadly stated by the courts, and frequently exercised. In the opinion of *Commonwealth* v. *Vincent,* 108 Mass. 441, is this language: " The Legislature of a State has the power to regulate the time and manner of fishing in the sea within its limits, and according to the opinions of most respectable judges, may even grant exclusive rights of fishing at particular places in tide water. *Burnham* v. *Webster,* 5 Mass. 266. *Dunham* v. *Lamphere,* 3 Gray, 268. *Smith* v. *State,* 18 How. 71. *Corfield* v. *Coryell,* 4 Wash. C. C. 371, 380. *Bennett* v. *Boggs,* Bald. 60. In those waters, whether within or beyond the ebb and flow of the tide, which are not navigable from the sea for any useful purpose, there can be no restriction upon its authority to regulate the public right of fishing, or to make any grants of exclusive rights which do not impair other private rights already vested. *Nickerson* v. *Brackett,* 10 Mass. 212. *Cleaveland* v. *Norton,* 6 Cush. 380. *Russell* v. *Russell,* 15 Gray, 159, 161." See also *Arnold* v. *Mundy,* 1 Halst. 1, 93; *Brown* v. *De Groff,* 21 Vroom, 409; *Moulton* v. *Libbey,* 37 Maine, 472. It is not to be assumed that a Legislature would undertake to grant exclusive rights except on the ground that the interests of the public would thereby be promoted.

The common right of the public and the right of regulation are the same in regard to shell fish as in regard to swimming fish. *Weston* v. *Sampson,* 8 Cush. 347. *Proctor* v. *Wells,* 103 Mass. 216. *Wharton* v. *Wise,* 153 U. S. 155.

In our opinion there is no doubt of the power of the selectmen, acting under the statute and the vote of the town, to make a regulation forbidding the taking of clams without a permit, except for the purposes and in the quantities authorized by the statute, and providing that permits shall be granted only to inhabitants of the town.

*Exceptions overruled.*