## State of Maine *vs.* Almon B. Leavitt, Appellant.

### Cumberland.    Opinion January 2, 1909.

*Fish and Fisheries.    Legislature has Control of Same.    Clams.    Private and Special Laws, 1903, chapter 317, Not in Conflict with 14th Amendment U. S. Constitution.    Colonial Ordinance, (Mass.) 1641.    U. S. Constitution, 14th Amendment.    Private and Special Laws, 1903, chapter 317.    Statute, 1821, chapter 179, section 3.    Revised Statutes, 1841, chapter 61; 1857, chapter 40, section 19; 1871, chapter 40, sections 19, 20; 1883, chapter 40, sections 23, 24; 1903, chapter 41.*

1.  The State holds the rights of common fishery in trust for the public, and as to them, it exercises not only the rights of sovereignty, but also the rights of property.

2.  The legislature has full power to regulate and control such fisheries, and may grant exclusive rights therein, when the interest of the public will thereby be promoted.

3.  Chapter 317 of the Private and Special Laws of 1903, which forbids the taking or digging of clams in any of the shores or flats of Scarboro, from the first day of April until the first day of October, in each year, by any person, except inhabitants or residents of the town, or hotel keepers within the town taking clams for the use of their hotels, is not obnoxious to that portion of the Fourteenth Amendment of the Constitution of the United States which declares that "No state shall deny to any person within its jurisdiction the equal protection of the laws," and is a constitutional exercise of legislative power.

On exceptions by defendant.    Overruled.

Complaint against the defendant for digging clams on Scarboro flats, Cumberland County, in violation of the provisions of Private and Special Laws, 1903, chapter 317.    On this complaint a warrant was duly issued by a trial justice in said county.    Presumably the defendant was convicted in the trial justice court although the record is silent on that point.    The defendant then appealed to the Superior Court in said county, and the appeal was entered at the May term, 1908, of said Superior Court at which said term "the defendant filed

a demurrer to the complaint and warrant with the agreement entered of record by the consent of the court that if final judgment on the demurrer was for the State, the defendant should have right to a trial by jury."

The presiding Justice of said Superior Court by a pro forma ruling, overruled the demurrer and held the complaint and warrant to be sufficient in law, and thereupon the defendant excepted.

The case is stated in the opinion.

*Joseph E. F. Connolly,* County Attorney, for the State.

*Charles P. Mattocks, and John A. Snow,* for defendant.

SITTING:  EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, BIRD, JJ.

SAVAGE, J.  Complaint for digging clams in violation of the provisions of chapter 317, Private and Special Laws of 1903. The case comes up on exceptions to the overruling of the defendant's demurrer.

The statute in question is as follows :

"Section 1.  No person shall take or dig or destroy in any manner clams in any of the shores or flats within the town of Scarboro from the first day of April until the first day of October in each year under a penalty of not less than ten or more than one hundred dollars for each and every violation of this statute.

Section 2.  The aforesaid section shall not apply to inhabitants or residents of said town taking clams for the use of himself and family nor to hotel keepers within the town taking clams for the use of their hotels."

The complaint alleges that the defendant was not a hotel keeper within the town taking clams for the use of his hotel, and that he was not an inhabitant or resident of the town taking clams for the consumption of himself and family.

The only point raised by the defendant is that this statute is obnoxious to that portion of the Fourteenth Amendment of the Constitution of the United States which declares that "No state shall

deny to any person within its jurisdiction the equal protection of the laws," and hence that it is unconstitutional and void.

We may first inquire into the nature of the right or privilege the equal protection of which is said to be denied by the statute in question. The shores of the sea and navigable rivers within the flux and reflux of the tide, by the common law belonged prima facie to the King. Holding the soil thus, the King held the appurtenant right of fishery, in trust for the benefit of his subjects. *Moulton* v. *Libbey*, 37 Maine, 472; *Com.* v. *Hilton*, 174 Mass. 29. And after Magna Charta, he could not, by an exercise of his prerogative, exclude the public from the right of fishery, or grant an exclusive right to a private individual, either together with or distinct from the soil. Hale, De Jure Maris, Ch. 5. The grantee of the King took the soil subject to the trust. Hence the right of taking fish where the tide ebbs and flows was common to all the people. *Warren* v. *Matthews*, 1 Salk. 357; *Ward* v. *Creswell*, Willes, 265; *Carter* v. *Burcot*, 4 Burr. 2162.

This common right of fishery included shell fish as well as swimming fish. *Bogott* v. *Orr*, 2 B. & P. 472; *Parker* v. *Cutler Milldam Co.*, 20 Maine, 353; *Moulton* v. *Libbey*, supra; *Martin* v. *Waddell*, 16 Pet. 367; *Weston* v. *Sampson*, 8 Cush. 347.

But the restriction placed by Magna Charta upon the exercise of the King's prerogative did not operate to abridge the power of Parliament over public and common rights. As was said in *Gough* v. *Bell*, 22 N. J. L. 459, "Of necessity, the jurisdiction to regulate and dispose of those rights which are common and public must reside in the legislative body, which is the representative of the people." *Wooley* v. *Campbell*, 37 N. J. L. 163. "The power of the commonwealth by the legislature over the sea, its shores, bays and coves, and all tide waters, is not limited, like that of the crown at common law." Shaw, C. J., in *Com.* v. *Alger*, 7 Cush. 82.

These public fishery rights were granted in the colonial charters to be held for the benefit of the inhabitants. *Moulton* v. *Libby*, supra, *Dill* v. *Wareham*, 7 Met. 438. The public rights were granted, accompanied as in England, with the powers of legislative regulation and control. When the colonies became independent,

the rights of common fishery remained in the States, for the public benefit. *Martin* v. *Waddell*, supra. The States hold them in trust for the public, and as to them, they exercise not only the rights of sovereignty, but also the right of property. *Com.* v. *Hilton*, 174 Mass. 29; *McCready* v. *Virginia*, 94 U. S. 391; *Stevens* v. *P. & N. R. R. Co.*, 34 N. J. L. 532.

By the Colonial Ordinance of 1641 of the Massachusetts Bay Colony which by usage and judicial adoption is taken to be a part of the common law of this State, *Lapish* v. *Bangor Bank*, 8 Maine, 85, the title to the seashore between high and low water mark, not exceeding one hundred rods, was vested in the owner of the upland. But it has always been held that the title is held subject to the public rights of fishery, for the right of each householder to have free fishing so far as the sea ebbs and flows was declared in the same ordinance. *Parker* v. *Cutler Milldam Co.*, supra; *Moulton* v. *Libby*, supra; *Weston* v. *Sampson*, supra.

It is, therefore, settled law that each State, unless it has parted with title, as by the Colonial Ordinance referred to, owns the bed of all tidal waters within its jurisdiction, and as well, the tidewaters themselves and the fish in or under them, so far as they are capable of ownership. For this purpose the State represents the people in their united sovereignty. The right which the people thus acquire comes not from their citizenship alone, but from their citizenship and property combined. It is in fact a property right, and not a mere privilege or immunity of citizenship. *McCready* v. *Virginia*, 94 U. S. 391; *State* v. *Peabody*, 103 Maine, 327. It is a right which belongs to the people of the State alone, and which they are not obliged to share with the people of other States. *McCready* v. *Virginia*, supra; *State* v. *Tower*, 84 Maine, 444; *Com.* v. *Hilton*, supra; *Corfield* v. *Coryell*, 4 Wash. C. C. 371. 8 Cyc. 1050.

Likewise it is true that the legislature of each State representing the people has full power to regulate and control such fisheries by legislation designed to secure the benefits of this public right in property to all its inhabitants. *State* v. *Peabody*, 103 Maine,

327 ; *Moulton* v. *Libbey,* supra. And it is not to be assumed that a legislature would undertake to control such a fishery even by granting exclusive rights, except on the ground that the·interest of the public would be thereby promoted. *Com.* v. *Hilton,* supra.

Although there are a few authorities which seem to hold that a public right of fishery is inalienable by the State, the great weight of authority and judicial expression is to the effect that the State in the exercise of its power of regulation and control may grant exclusive rights of fishery to individuals. *Com.* v. *Hilton,* supra ; *Com.* v. *Vincent,* 108 Mass. 441 ; *Burnham* v. *Webster,* 5 Mass. 265, (which was a Scarborough case) *Cleaveland* v. *Norton,* 6 Cush. 380 ; *Wooley* v. *Campbell,* 37 N. J. L. 163 ; *Gough* v. *Bell,* 22 N. J. L. 441 ; *Lakeman* v. *Burnham,* 7 Gray, 437 ; *Hathaway* v. *Thomas,* 16 Gray, 290 ; *Com.* v. *Bailey,* 13 All. 541; *Chalker* v. *Dickinson,* 1 Conn. 382 ; *Hickman* v. *Swett,* 107 Cal. 276 ; *Ex parte Maier,* 103 Cal. 476 ; *Geer* v. *Connecticut,* 161 U. S. 519. See *Moor* v. *Veazie,* 32 Maine, 343 ; *Mullen* v. *Log Driving Co.,* 90 Maine, 555. In the case of *Com.* v. *Hilton,* 174 Mass. 29, which we have cited several times in this opinion, the right of the State to prohibit by authorized municipal regulation, the taking of clams for sale by any except the inhabitants of the town in which the clam beds are situated was upheld, though in that case it appears that by general statutes the right of every citizen of the State to take clams "for his family use" was saved.

From the time of the adoption of the Ordinance of 1641 until the present time, it has been the policy of Massachusetts and Maine to regard the inhabitants of the several towns as entitled to superior or preferential privileges in the clam beds within their respective limits, and this policy has been repeatedly crystallized in the statutory law. In the Colonial Ordinance of 1641, it was declared that "every inhabitant that is a householder shall have free fishing and fowling in any great ponds, bays, coves and rivers, so far as the sea ebbs and flows within the precincts of the town where they dwell, unless the freemen of the same town or the general court have otherwise appropriated them." It should be said that the phrase "free fishing" has been held not to mean exclusive fishing. *Melvin*

v. *Whiting*, 7 Pick, 79; *Coolidge* v. *Williams*, 4 Mass. 139;
*Com.* v. *Bailey*, 13 All. 541. These cases, however, recognize
the power of the State to appropriate or grant the fisheries.

In *Com.* v. *Hilton*, the Supreme Judicial Court of Massachusetts,
citing the ordinance referred to, and many Massachusetts statutes,
said : — "From the earliest times, in regulating common rights in
fisheries, statutes have been passed which authorize a preference of
inhabitants of the town in which the fishing place is located." In
*Dill* v. *Wareham*, 7 Met. 438, after declaring that towns have no
property in fisheries, the court said :—"Still the laws recognized
some rights of the inhabitants of towns, as the celebrated Colony
Ordinance of 1641, which secured free fishing and fowling but limited
the privileges thereby secured to householders, and to such free fish-
ing and fowling within the limits of their respective townships. Such
regulations obviously gave the privilege rather to the inhabitants of
townships personally and respectively than to the town in its cor-
porate capacity; and rather as a common privilege than as a right
of property."

In this State the principle of preference was recognized at the
start, and in some form or other has continued to be recognized.
In the Statute of 1821, ch. 179, sect. 3, the taking of shell fish
without permits from the selectmen was forbidden, with the excep-
tion that "every inhabitant of each town might take without permit
shell fish for the use of his or her family." The privilege of taking
a limited amount for bait was also excepted. The same provisions
appear in R. S., 1841, ch. 61, and were held, in *Moulton* v. *Libby*,
supra, to be a valid regulation of the common fisheries. In R. S.,
1857, ch. 40, sect. 19, the provisions were modified by limiting
permits to inhabitants of the State to their respective towns. These
regulations were continued unchanged in R. S., 1871, ch. 40, sects.
19, 20, and R. S., 1883, ch. 40, sects. 23, 24. By R. S., 1903,
ch. 41, the power of regulating clam digging within their respective
limits was remitted to the towns. The towns were to vote, and the
municipal officers were to grant permits. But a preference for "the
use of the inhabitants of the town" is still shown, except when the

town fails to take action, in which case there is free fishing for every one. *State* v. *Wallace,* 102 Maine, 229.

Up to this point we have discussed the power of the State without reference to the Fourteenth Amendment to the federal constitution. This somewhat lengthy recapitulation of time worn principles has seemed necessary in order that we may view precisely the legal situation with respect to common fisheries to which it is claimed that the Fourteenth Amendment has now attached and concerning which all the inhabitants of the State are entitled to the equal protection of the laws.

"What satisfies the equality protected by the constitution has not been and probably never can be precisely defined." *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S. 293; *Strauder* v. *West Virginia,* 100 U. S. 303. Perhaps the most comprehensive definition is that found in *Barbier* v. *Connolly,* 113 U. S. 27. "The Fourteenth Amendment in declaring that no state shall deny to any person within its jurisdiction the equal protection of the laws undoubtedly intended . . . that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and. enjoy property . . . . that no ·impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances. . . . Class legislation discriminating against some, favoring others is prohibited; but legislation which is carrying out a public purpose is limited in its application if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." In 6 L. R. A. 621, it was well said that "to forbid an individual or a class the right to the acquisition or use or enjoyment of property in such manner as should be permitted to the community at large would be to deprive them of liberty in particulars of primary importance to their pursuit of happiness and invalid as subversive of rights guaranteed by the Fourteenth Amendment." In our own case of *State* v. *Montgomery,* 94 Maine, 192, we said that the inhibition of the Fourteenth Amendment was designed to prevent any person or class of persons from

being singled out as a special subject for discriminating and hostile legislation." *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181.

And it is important to. note in this connection that the equality clause in the Fourteenth Amendment did not create any new or substantive legal rights, nor enlarge the general classification of rights of persons or things existing in any State under the laws thereof. It operated upon them as it found them established, and it declared in substance that such as they were in each State, they should be held and enjoyed alike by all persons within its jurisdiction. *Minor* v. *Happersett,* 21 Wall. 162; *U. S.* v. *Cruikshank,* 92 U. S. 542; *Ward* v. *Flood,* 48 Cal. 36; 17 Am. Rep. 405.

But the equality clause is not necessarily infringed by special legislation, nor by a legislative classification of persons or things. "It only requires the same means and methods to be applied impartially to all the constituents of a class so that the law shall operate equally and uniformily upon all persons in similar circumstances . . . . It does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions. . . . . The rule therefore is not a substitute for municipal laws. It only prescribes that that law have the attribute of equality of operation, and equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to relations." *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S. 293; *Kentucky Railroad Tax Cases,* 115 U. S. 321. We have already seen that the Fourteenth Amendment is not infringed upon by a State law confining the right of fishing within the navigable waters of the State to citizens of the State. *McCready* v. *Virginia,* 94 U. S. 391.

Special legislation is not obnoxious to the equality clause of the Fourteenth Amendment, if all persons subject to it are treated alike under similar circumstances and conditions. *Missouri Pac. Ry. Co.* v. *Mackay,* 127 U. S. 205; *Hayes* v. *Missouri,* 120 U. S. 68. Wherever the law operates alike upon all persons and property

similarly situated, equal protection cannot be said to be denied. *Walston* v. *Nevin*, 128 U. S. 578. The equality clause means that no person or class of persons shall be denied the same protection of the law which is enjoyed by other-persons or other classes in the same place and under like circumstances. *Missouri* v. *Lewis*, 101 U. S. 22 ; *Dow* v. *Beidelman*, 125 U. S. 680 ; *Wurts* v. *Hoagland*, 114 U. S. 606 ; *Missouri Pac. Ry. Co.* v. *Humes*, 115 U. S. 512 ; *Lowe* v. *Kansas*, 163 U. S. 81 ; *Leavitt* v. *C. P. Ry. Co.*, 90 Maine, 153.

It was said by this court in *State* v. *Mitchell*, 97 Maine, 66, that "these constitutional provisions do not prevent a state diversifying its legislation or other action to meet diversities in situations and conditions within its borders.   There is no inhibition against a state making different regulations for different localities, for different kinds · of business and occupations  .   .   .   and generally for different matters affecting differently the welfare of the people. Such different regulations of different matters are not discriminations between persons, but only between things and situations.   They make no discrimination for or against any one as an individual or as one of a class of individuals, but only for or against his locality, his business or occupation, the nature of his property," etc.

But discrimination, to be constitutional, must be based upon some reasonable ground,—some difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection.   *Gulf, Colorado & Santa Fe Ry.* v. *Ellis*, 165 U. S. 150 ; *State* v. *Montgomery*, 94 Maine, 192.   It must be reasonable and based upon real differences in the situation, condition or tendencies of things.   *State* v. *Mitchell*, supra ; *Covington, etc., Turnpike Co.* v. *Sandford*, 164 U. S. 578 ; *New York, New Haven and Hartford R. R. Co.* v. *New York*, 165 U. S. 623.

In the light of these interpretations of the equality clause of the Fourteenth Amendment, is the statute in question so manifestly unreasonable and arbitrary in its discrimination, as to fall before the constitutional inhibition ?   We are led to think not.

The statute forbids all classes of persons with two exceptions, from taking clams in Scarboro for any purpose.   The exceptions are

inhabitants or residents of the town who may take clams for the use of themselves and families, and hotel keepers within the town who may take for the use of their hotels. It is evident that all of the inhabitants of the State cannot take clams in Scarboro without limit. Such indiscriminate taking might be destructive of the fishing itself, a point which is noticed in some of the cases. *Nickerson* v. *Brackett*, 10 Mass. 212; *Corfield* v. *Coryell*, 4 Wash. C. C. 371. That the State may by regulation prevent such destruction we think must be conceded. To do this the State must necessarily limit the times within which or the number of persons by whom they may be taken. The State can undoubtedly limit the times. It can fix "close times." But would it be a practicable regulation of clams for all to have clams one year and none to have any another? We do not know the clam digging situation in Scarboro as the legislature is presumed to have known. But we are concluded by the legislative determination that the interest of the public would be promoted by this legislation. *Com.* v. *Hilton*, 174 Mass. 29. It must be assumed that there was good reason in the public interest for the classification, saving only the question of equal protection of individuals or classes.

Since it must be assumed that the public interest required some limitation upon the right of clam fishing, it does not seem to us that it is unreasonable or arbitrary for the State having a proprietary interest as well as a governmental power all for the public benefit to give the preference to those whom the law for more than two hundred and fifty years has given a preference, and who were enjoying a preference when the Fourteenth Amendment was adopted, namely, the inhabitants of the town within which the fisheries are located. The discrimination between them and the inhabitants of other towns seems to us to "bear a just and proper relation" to the difference in situation, in locality and in the actual enjoyment of prior legal rights or privileges. It is not unreasonable that they to whose doors nature has brought these "succulent bivalves" . . . . shall be entitled to them before those who are less favorably situated whenever there must be restriction. And we do not think that the

legislative recognition of this existing superiority in situation and privilege denies to others the equal protection of the law.

And it may be said further that if the State may, under the circumstances, prefer some, it may so far as the Fourteenth Amendment is concerned, entirely exclude others. A preference violates equality as certainly as exclusion does.

The reasons suggested by us for holding that this discriminating legislation is not inimical to the equal protection clause of the Fourteenth Amendment apply alike to the inhabitant of the town who takes clams for his own use and to the hotel keeper in the town who takes them for use in his hotel.

*Exceptions overruled.*
*Case to stand for trial.*
*as per stipulation.*