STATE OF MAINE
*vs.*
ROBERT LEMAR

Sagadahoc.   Opinion, April 9, 1952.

*Harold J. Rubin,* for State.

*Nunzi F. Napolitano,* for Aplt.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

THAXTER, J. The respondent was charged in the Bath Municipal Court with a violation of Sec. 77 of Chap. 34 of Revised Statutes of 1944, as amended by Sec. 85, Chap. 332, Public Laws of 1947, which reads as follows:

"No person, firm or corporation shall, within the limits of the town of Woolwich in the county of Sagadahoc, dig or take any clams, clam-worms, sand-worms or blood-worms, without having first obtained a license from the municipal officers of said town of Woolwich, who are authorized to grant and issue such licenses and fix the fee therefor. No license shall be granted or issued to any person, firm or corporation unless such person, firm, or corporation is a resident of said town of Woolwich. Nothing herein shall prohibit a riparian owner of shores or flats in said town of Woolwich from digging and taking clams therefrom for food for himself and family without license. For the purposes of sections 85 to 87, inclusive, the term 'a resident' shall mean a person, firm or corporation who has resided in this state for a term of at least 6 consecutive months and in the town of Woolwich for at least 3 consecutive months prior to making application for license."

The particular offense with which the respondent is charged is that, being a resident of Dresden in the County of Lincoln, he did at Woolwich, in the County of Sagadahoc, on June 9, 1951, unlawfully and without right "dig" bloodworms without first having obtained a license from the Municipal Officers of said Town of Woolwich." The complaint was brought in the Municipal Court at Bath in said County of Sagadahoc; the respondent, after a plea of not guilty, was found guilty and fined $15.00 and costs; and appealed to the Superior Court to be held on the first Tuesday of June, 1951. All parties agreeing, the case was reported by the Superior Court sitting at Bath to this court on an agreed statement of facts and a stipulation that the only issue was "the question of the constitutionality of Chapter 34, Section 77, Revised Statutes of Maine, as re-

vised by Chapter 332, Section 85, of the Public Laws of 1947, and incorporated in the Second Biennial Revision of the Sea and Shore Fisheries Laws of the Public Laws of 1949, which the respondent contends deprives him of his property without due process of law; abridges his privileges and immunities; denies him the equal protection of the laws in contravention of the Fourteenth Amendment to the United States Constitution, and precludes him from acquiring and possessing property, and of pursuing and obtaining safety and happiness in violation of Article I, Section 1, of the Constitution of the State of Maine."

The facts are not in dispute. The agreed statement reads in part as follows:

"On the ninth day of June, A. D. 1951, Robert Lemar, of Dresden, Maine, was arrested by a Warden of the Maine Sea and Shore Fisheries Department for unlawfully digging blood-worms from the flats within the limits of the Town of Woolwich, he, the said Robert Lemar, not then having a written permit of the Municipal Officers of said Town of Woolwich and paying the fee therefor, and he not being a riparian owner of shore or flats in said Town.

"It is admitted that said Robert Lemar dug said worms as above set forth; that he was a resident of Dresden at that time; that he had no license from said Town, but that he did have a valid commercial fishing license issued by the Commissioner of Sea and Shore Fisheries of the State of Maine permitting him to dig and sell worms taken from the flats and coastal waters of the State; that said respondent was not a riparian owner of the shore or flats within said Town of Woolwich; also that said respondent is a legal resident of the State of Maine within the terms and provisions of the Sea and Shore Fisheries Laws of said State, to wit: Chapter 34, Revised Statutes of 1944, as revised."

The only issue is the constitutionality under the state and federal constitutions of the statute here involved. That

issue seems to have been settled by the case of *State* v. *Leavitt*, 105 Me. 76, except that that case applies to clams and this to bloodworms. The principles of law involved in each case are exactly the same.

In the *Leavitt* case, the opinion of the court discusses exhaustively the very complex question of the rights of riparian owners in navigable rivers to the shore front where it is bounded by the sea and where the tide ebbs and flows. It is unnecessary to discuss the question as to what extent the rule of law laid down in that case over forty years ago may have been modified by recent decisions of the Supreme Court of the United States. It is sufficient to say that that case still remains the law in this state in so far as it involves the right of this state to control by legislation public fishing rights in the waters along our shores. In other words, this state, unless it has parted with title, owns the bed of all tidal waters within its jurisdiction as well as such waters themselves so far as they are capable of ownership, and has full power to regulate and control fishing therein for the benefit of all the people. *Commonwealth* v. *Hilton*, 174 Mass. 29, 33. The legislature has the right to authorize the selectmen of each town within the state to make a regulation forbidding the taking of clams without a permit and to provide that permits shall be granted only to the inhabitants of the town. *Commonwealth* v. *Hilton*, *supra*. Such a regulation is not in violation of the Fourteenth Amendment of the Constitution of the United States.

As was said in *State* v. *Leavitt*, *supra*, at page 85, et seq.:

"Since it must be assumed that the public interest required some limitation upon the right of clam fishing, it does not seem to us that it is unreasonable or arbitrary for the State having a proprietary interest as well as a governmental power all for the public benefit to give the preference to those whom the law for more than two hundred and fifty years has given a preference, and who

were enjoying a preference when the Fourteenth Amendment was adopted, namely, the inhabitants of the town within which the fisheries are located. The discrimination between them and the inhabitants of other towns seems to us to 'bear a just and proper relation' to the difference in situation, in locality and in the actual enjoyment of prior legal rights or privileges. It is not unreasonable that they to whose doors nature has brought these 'succulent bivalves' . . . shall be entitled to them before those who are less favorably situated whenever there must be restriction. And we do not think that the legislative recognition of this existing superiority in situation and privilege denies to others the equal protection of the law.

"And it may be said further that if the State may, under the circumstances, prefer some, it may so far as the Fourteenth Amendment is concerned, entirely exclude others. A preference violates equality as certainly as exclusion does.

"The reasons suggested by us for holding that this discriminating legislation is not inimical to the equal protection clause of the Fourteenth Amendment apply alike to the inhabitant of the town who takes clams for his own use and to the hotel keeper in the town who takes them for use in his hotel."

As we said earlier, the same rule which applies to clams applies also to bloodworms. The respondent would have us overrule *State* v. *Leavitt, supra,* which has been the law in this state for many years. This we are not prepared to do.

*Judgment for the State.*

*Case remanded to the Superior Court for sentence.*