STATE of Maine

v.

**William O. ALLEY.**

Supreme Judicial Court of Maine.

March 5, 1971.

Alan Graves, County Atty., William B. Talbot, Machias, for the Inhabitants of the Town of Jonesboro.

Silsby & Silsby by Herbert T. Silsby, II, Ellsworth, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WEBBER, Justice.

On report under M.R.Crim.P., Rule 37A(a). Respondent was charged by complaint in the District Court with a violation of an ordinance of the town of Jonesboro dealing with the taking of clams from the flats of that town by nonresidents thereof. He was there found guilty and fined and thereafter appealed to the Superior Court. Respondent there moved to dismiss the complaint on the grounds that (a) 12 M.R. S.A. Sec. 4252 as amended, the enabling Act under which the Jonesboro ordinance was enacted, is unconstitutional, or alternatively (b) that 12 M.R.S.A. Sec. 4252 as amended was repealed by P.L.1965, Ch. 21.

We note at the outset that the record supplied this Court on report fails to comply with the conjoined requirements of M. R.Crim.P., Rules 37A(c) and 39(a). There is no indication that the respondent has been judicially determined to be indigent and therefore Rule 39A has no application. Since in this case the record is brief and plays no significant role in our deliberations, we have elected not to discharge the report but upon our own motion to waive the rule requirement and accept the case for decision.

The agreement of the parties which undergirds the order of the Superior Court reporting the case makes it clear that the factual allegations of the complaint are true, that the necessary and appropriate ac-

tions in enacting the ordinances here pertinent were taken and all statutory requirements met, and that if the legal grounds asserted in the motion to dismiss are not sustained, judgment should be entered for the State.

█ Since an effective repeal of the enabling Act would decide the case and eliminate the necessity of considering the constitutional issue, we turn first to the second ground of attack lodged by the respondent.

P.L.1959, Ch. 331 was a complete revision of the laws relating to Sea and Shore Fisheries which were thereby incorporated in the Revised Statutes of 1954 as a new Chapter 37–A. Sec. 50 of the new chapter constituted an enabling Act under which municipalities could regulate and license the taking of clams and certain other products of the sea, but there was contained therein no reference to residence requirements. This law became effective September 12, 1959. At the same session the Legislature enacted P.L.1959, Ch. 354 which amended Secs. 50 and 54 of the new law (Chapter 37–A) in a manner not pertinent to this discussion. It was specifically provided therein that the amendatory Act (P.L.1959, Ch. 354) should not become effective until March 1, 1960 and should remain in effect only until January 1, 1962. In short, for reasons not readily apparent, the Legislature intended that these amendments should be temporary in nature and that after January 1, 1962 the Sea and Shore Fisheries law as stated in the new Ch. 37–A should stand in the original form unamended by P.L.1959, Ch. 354. By P.L. 1961, Ch. 338 the life of these amendments was further extended to January 1, 1964 and by P.L.1963, Ch. 302 still further extended to January 1, 1966. By P.L.1965, Ch. 21 the Legislature repealed the section (Sec. 3) of P.L.1959, Ch. 354 as amended which had prescribed the effective date and the intended life expectancy of the amendments therein. What effect this action had on the amendments need not concern us here since in any event nothing contained therein was relevant to the issues in the instant case. The new Chapter 37–A as adopted in P.L.1959, Ch. 331, apart from the amendments in Ch. 354, remained unaffected by the repealer in P.L. 1965, Ch. 21. In the meantime, however, the Legislature had by P.L.1963, Ch. 277 made certain other amendments to R.S.1954, Ch. 37–A which are reflected in the present law (12 M.R.S.A. Secs. 4251 and 4252). It was at this point that the provision was inserted which enables municipalities to impose residence requirements in its licensing procedure. Additional amendments to 12 M.R.S.A. Secs. 4251 and 4252 by P.L.1965, Ch. 33 completed the amendment process as to these sections so that the provisions thereof which are here pertinent and effectively in force now read as follows:

"§ 4251. *Municipal funds for conservation*

Any municipality by vote of its legislative body may raise and appropriate money for any shellfish conservation program which has been approved by the commissioner.

"1. *Joint municipal programs and funds authorized.* Any municipality by vote of its legislative body may authorize its municipal officers to enter into an agreement with any number of other municipalities for any joint shellfish conservation program approved by the commissioner, and may raise and appropriate money for that joint program.

"§ 4252. *Municipal ordinances for regulation and licensing*

Any municipality which has raised or appropriated money within 2 years next prior to acting under this section for a shellfish conservation program approved by the commissioner as authorized under section 4251 may enact a municipal ordinance fixing the time when clams, quahogs and mussels may be taken from any or all of the coastal waters and flats within the municipality, except for those

areas closed by regulation of the commissioner under section 3503 or section 3504. The ordinance must have the written approval of the commissioner before adoption and that approval must be filed with the municipal clerk prior to adoption. The ordinance may provide limitations on the amount of clams, quahogs and mussels which may be taken within the municipality, and may provide that municipal licenses be required for the taking of any such species within the municipality, and may determine the qualifications for the license, *including residence requirements,* and may fix the license fees.[1]

"1. *Filing requirements.* Ordinances adopted under this section shall remain in full force and effect for a period of 3 years unless sooner terminated by the terms of the ordinance or by repeal by the municipal legislative body. A certified copy of the ordinance shall be filed with the commissioner within 7 days after its adoption.

"2. *Local enforcement.* Any municipality that enacts any ordinance under authority of this section shall be responsible for the enforcement of the ordinance.

"3. *Penalty for ordinances.* Whoever takes clams, quahogs, or mussels contrary to a municipal ordinance authorized by this section shall be punished by a fine of not more than $10 or by imprisonment for not more than 30 days.

"4. *Municipality defined.* For the purposes of this section and section 4251, municipality includes a village corporation.

"5. *Ordinances may grant privileges to municipalities having conservation agreements.* Any ordinance adopted un-

der this section may grant shellfish digging license privileges to the residents of any municipality which has a joint shellfish conservation agreement with the municipality enacting the ordinance." (Emphasis ours)

In 1969 and pursuant to the above quoted statutes, two ordinances were enacted by the Town of Jonesboro which in effect and for our purposes (a) permit a Jonesboro resident or riparian owner to take up to one peck of shellfish a day for family use without license, (b) permit a licensed resident to take any quantity of shellfish, and (c) permit a licensed nonresident to take up to one peck of shellfish a day for household use only. Except as thus provided it is unlawful for either a resident or a nonresident to take shellfish in Jonesboro.

■ Although the respondent's attack is directly upon the constitutionality of the enabling statute and only indirectly and collaterally upon the ordinances, he asserts that both enabling Act and ordinances violate the equal protection clause of the Fourteenth Amendment as well as the Maine Constitution, Art. 1, Sec. 6–A. The argument is that a statute which permits the exclusion of nonresidents from licensed privileges accorded to residents is impermissibly discriminatory. Here the nonresidents are excluded from licensed commercial operations (unlimited taking), a privilege which only licensed residents can enjoy.

The problem is not new. It was clearly resolved, we think, by our decisions in State v. Leavitt (1909) 105 Me. 76, 85, 72 A. 875 and State v. Lemar (1952) 147 Me. 405, 408, 87 A.2d 886. The right to discriminate between residents and nonresidents, either of the State or of the municipality, rests upon the ownership by the

---

1. Note omission of sentence reading, "The ordinance may provide for the size of softshell clams which may be taken from the flats within the municipality." This omission results from uncertainty creat-

ed by the passage of P.L.1965, Ch. 21. We do not wish to use this opinion as a vehicle for determination of a troublesome issue not relevant to the instant case.

people of the natural resources of the State and the legislative power to regulate and control in order to conserve and protect these resources.

In *Leavitt* a statute prohibited the taking of clams in Scarboro but as an exception permitted (a) the taking by residents for family use and (b) the taking by Scarboro hotel keepers for hotel use. The Court expounded the "trust theory" holding that the State held the tidal flats and their produce for the benefit of all the people but subject to legislative regulation and control. This regulation and control might lawfully prefer some individuals and exclude others. The Court was satisfied that the Fourteenth Amendment was not violated by exclusion of nonresidents of Scarboro, the exclusion having a rational and reasonable basis. The Court said:

"Since it msut be assumed that the public interest required some limitation upon the right of clam fishing, it does not seem to us that it is unreasonable or arbitrary for the State having a proprietary interest as well as a governmental power all for the public benefit to give the preference to those whom the law for more than two hundred and fifty years has given a preference, and who were enjoying a preference when the Fourteenth Amendment was adopted, namely, the inhabitants of the town within which the fisheries are located. The discrimination between them and the inhabitants of other towns seems to us to 'bear a just and proper relation' to the difference in situation, in locality and in the actual enjoyment of prior legal rights or privileges. It is not unreasonable that they to whose doors nature has brought these 'succulent bivalves' * * * shall be entitled to them before those who are less favorably situated whenever there must be restriction. And we do not think that the legislative recognition of this existing superiority in situation and privilege denies to others the equal protection of the law.

"And it may be said further that if the State may, under the circumstances, prefer some, it may so far as the Fourteenth Amendment is concerned, entirely exclude others. A preference violates equality as certainly as exclusion does."

So also in *Lemar* a statute required a town license to take clams or worms in Woolwich, such licenses, however, to be issued only to residents. An exception was made for riparian owners taking for family use. The result was a complete exclusion of nonresidents. The Court reaffirmed and followed *Leavitt* which it deemed to be controlling. The Court said:

"In other words, this state, unless it has parted with title, owns the bed of all tidal waters within its jurisdiction as well as such waters themselves so far as they are capable of ownership, and has full power to regulate and control fishing therein for the benefit of all the people. Commonwealth v. Hilton, 174 Mass. 29, 33, 54 N.E. 362, 45 L.R.A. 475. The legislature has the right to authorize the selectmen of each town within the state to make a regulation forbidding the taking of clams without a permit and to provide that permits shall be granted only to the inhabitants of the town. Commonwealth v. Hilton, supra. Such a regulation is not in violation of the Fourteenth Amendment of the constitution of the United States."

It is necessary to distinguish those situations in which discrimination in favor of residents as against nonresidents is not constitutionally permitted. The peddler cases furnish a good illustration of constitutional violation. State v. Montgomery (1900) 94 Me. 192, 47 A. 165; State v. Mitchell (1902) 97 Me. 66, 53 A. 887; State v. Cohen (1935) 133 Me. 293, 177 A. 403. *Cohen* makes clear that there are exceptions to the general rule that a statute discriminating against nonresidents is unconstitutional and void. Among the examples illustrating such exceptions, the Court included, "Hunting and fishing licenses, on

the ground that game, fish and fur-bearing animals, not reduced to possession, *are the common property of the citizens of the State.* Lacoste v. Department of Conservation, 263 U.S. 545, 44 S.Ct. 186, 68 L.Ed. 437." (Emphasis supplied).[2]

There has been some qualification of the property concept especially as applied to fish and other forms of ocean life which move freely in coastal waters off the several states. This distinction was clearly made in Russo v. Reed (1950) D.C.Me., 93 F.Supp. 554 in which a three judge Court carefully analyzed Toomer v. Witsell (1948) 334 U.S. 385, 68 S.Ct. 1156, 92 L. Ed. 1460 (shrimp in coastal waters) and distinguished McCready v. Virginia (1876) 94 U.S. 391, 24 L.Ed. 248 (oysters in the tide water of a river). *Russo* clearly has no application to shellfish in the tidal flats of a state which may be treated as having a relatively fixed location. *Russo* suggests that even in the case of free swimming fish in coastal waters, regulation by state statute giving preferential treatment to local citizens would be permissible if reasonably related to the needs of conservation.

We are satisfied that the authority conferred upon municipalities by 12 M.R.S.A. Sec. 4252 to impose residence requirements is soundly based and not violative of any constitutional requirements. As an added but by no means indispensable safeguard, the statute ties the authority conferred on municipalities to municipal participation in a conservation program, thus emphasizing the reasonable and rational basis for regulation and control of shellfish.

Motion denied.

Judgment for the State.

2. As to the property concept, see State v. Tower (1892) 84 Me. 444, 24 A. 898.