Ernest E. **BURGESS** et al., Plaintiffs,

v.

**M/V TAMANO** et al., Defendants and Third-Party Plaintiffs,

v.

**UNITED STATES** of America et al., Third-Party Defendants.

Mark **SNOW** et al., Plaintiffs,

v.

**M/V TAMANO** et al., Defendants and Third-Party Plaintiffs,

v.

**UNITED STATES** of America et al., Third-Party Defendants.

Calvin E. **DOUGHTY**, Jr., et al., Plaintiffs,

v.

**M/V TAMANO** et al., Defendants and Third-Party Plaintiffs,

v.

**UNITED STATES** of America, Third-Party Defendants.

Civ. Nos. 13–111 and 13–156, 13–115, 13–120.

United States District Court, D. Maine, S. D.

July 27, 1973.

---

See also D.C., 357 F.Supp. 1097.

Theodore H. Kurtz, John A. Graustein, Portland, Me., for Ernest E. Burgess, John S. Norton and Alberto L. DiMillo, and others.

Norman S. Reef, Portland, Me., Morris D. Katz, Boston, Mass., for Marshall Madsen.

Warren E. Winslow, Portland, Me., for Warren I. and Barbara S. Paul.

Thomas R. McNaboe, Benjamin Thompson, James P. Lansing, Portland, Me., for M/V Tamano and Messrs. Wilhelmson.

Ralph I. Lancaster, Jr., Portland, Me., for Texaco, Inc.

Allen vanEmmerik, Emmet B. Lewis, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Peter Mills, U.S. Atty., Portland, Me., for U.S.A.

Jon A. Lund, Atty. Gen., Martin L. Wilk, Asst. Atty. Gen., Augusta, Me., for State of Maine.

Charles W. Smith, Saco, Me., James R. Flaker, Portland, Me., for Mark Snow and Frederick Ahearn and Wild Acres Tent and Trailer Park, Inc., and others.

John A. Mitchell, Portland, Me., Joseph C. Smith, John F. O'Connell, New York City, for Charles C. Dunbar, Jr. and Portland Pilots, Inc.

Michael B. Latti, Robert S. Wolfe, Boston, Mass., Frederick T. McGonagle, Gorham, Me., for Calvin E. Doughty, Jr. and Anthony L. Gibbons.

Frederick P. Armstrong, Jr., Cape Elizabeth, Me., for Jane S. Armstrong.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Plaintiffs in these class actions seek to recover damages incurred as a result of the discharge into the waters of Casco Bay of approximately 100,000 gallons of Bunker C oil from the tanker M/V TAMANO early on the morning of July 22, 1972, when she struck an outcropping of "Soldier Ledge" while passing through Hussey Sound en route to the port of Portland. Variously named as defendants or third-party defendants are the TAMANO, her owners, her captain, her pilot and the local pilots' association, her charterer, Texaco, Inc., the State of Maine, and the United States of America. Liability is asserted on theories of negligence, unseaworthiness, trespass and nuisance, as well as under Section 13 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 407, and Section

11(b)(2) of the Water Quality Improvement Act of 1970, 33 U.S.C. § 1161(b)(2). The admiralty and maritime jurisdiction of the federal courts is invoked pursuant to 28 U.S.C. § 1333(1) and 46 U.S.C. § 740.

Presently before the Court are defendants' motions to dismiss the claims of three of the plaintiff classes: the commercial fishermen in Nos. 13–111 and 13–156; the commercial clam diggers in No. 13–120; and, in No. 13–115, the owners of motels, trailer parks, camp grounds, restaurants, grocery stores, and similar establishments in Old Orchard Beach, whose businesses are dependent on tourist trade. Principally relying on Smedberg v. Moxie Dam Co., 148 Me. 302, 92 A.2d 606 (1952), defendants contend that the economic interests (loss of profits and impairment of earning capacity) which these classes of plaintiffs assert to have been damaged by the oil spill are not legally cognizable because none of the classes had any property interest in the coastal waters and marine life or shores claimed to have been injured by the spill. For reasons to be briefly stated, the Court holds that the motions to dismiss the claims of the commercial fishermen and clam diggers must be denied, but that the motions to dismiss the claims of the Old Orchard Beach businessmen, other than those who owned shore property physically injured by the spill, must be granted.

The parties agree that, as alleged in the complaints in these actions, an oil spill occurring in Maine's coastal waters constitutes a maritime tort and is within the admiralty jurisdiction of this Court. Maryland v. Amerada Hess Corp., 350 F.Supp. 1060, 1063–1065 (D.Md.1972); California v. S.S. Bournemouth, 307 F. Supp. 922, 926–928 (C.D.Cal.1969). They are also in accord that there is no statutory or judicially established federal admiralty rule governing the issues presented by the instant motions. De-

fendants argue, citing Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), that in such circumstances the Court must look for the applicable rule to the law of the State of Maine, in whose coastal waters the spill occurred. See also Gilmore & Black, The Law of Admiralty, §§ 1–17 (1957). Plaintiffs take the position that, despite the silence of federal maritime law, this Court must, in the interest of national harmony, fashion a uniform federal rule. See The Lottawanna, 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654 (1874); Southern Pacific v. Jensen, 244 U.S. 205, 206, 37 S. Ct. 524, 61 L.Ed. 1086 (1917); Romero v. International Terminal Operating Co., 358 U.S. 354, 373–275, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S. Ct. 1772, 26 L.Ed.2d 339 (1970).[1] But the view which this Court takes of the case makes it unnecessary to determine whether the general maritime law or the law of Maine is controlling.

First, as to the claims of the commercial fishermen and clam diggers, it is not disputed that title to its coastal waters and marine life, including the seabeds and the beds of all tidal waters, is vested in the State of Maine and that individual citizens have no separate property interest therein. State v. Peabody, 103 Me. 327, 330, 69 A. 273 (1907); State v. Leavitt, 105 Me. 76, 79, 72 A. 875 (1909); State v. Ruvido, 137 Me. 102, 104–105, 15 A.2d 293 (1940); State v. Lemar, 147 Me. 405, 408, 87 A. 2d 886 (1952); State v. Alley, 274 A.2d 718, 720–721 (Me.1971). See also McCready v. Virginia, 94 U.S. 391, 394, 24 L.Ed. 248 (1876); Toomer v. Witsell, 334 U.S. 385, 402 (1948); id. at 408, 68 S.Ct. 1156, 92 L.Ed. 1460 (Frankfurter, J., concurring). It is also uncontroverted that the right to fish or to harvest clams in Maine's coastal waters is not the private right of any individual, but

---

1. Plaintiffs further suggest that *Wilburn Boat* should be limited to its facts. *See* Wilburn Boat Co. v. Fireman's Fund Insurance Co., *supra*, 348 U.S. at 321, 75 S.Ct. 368 (Frankfurter, J., concurring); Kossick v. United Fruit Co., 365 U.S. 731, 742, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961).

is a public right held by the State "in trust for the common benefit of the people." Moulton v. Libbey, 37 Me. 472, 488 (1854); State v. Leavitt, *supra* 105 Me. at 78–79, 75 A. 875. *See also* Martin v. Waddell, 41 U.S. (16 Pet.) 367, 413, 10 L.Ed. 997 (1842). Since the fishermen and clam diggers have no individual property rights with respect to the waters and marine life allegedly harmed by the oil spill, their right to recover in the present action depends upon whether they may maintain private actions for damages based upon the alleged tortious invasion of public rights which are held by the State of Maine in trust for the common benefit of all the people.[2] As to this issue, the long standing rule of law is that a private individual can recover in tort for invasion of a public right only if he has suffered damage particular to him —that is, damage different in kind, rather than simply in degree, from that sustained by the public generally. Prosser, Law of Torts, § 88 at 586–87 (4th ed. 1971); Prosser, Private Action for Public Nuisance, 52 Va.L.Rev. 997, 1004–11 (1966); Restatement (Second) of Torts § 821C(1) (Tent.Draft No. 17, 1971). Concededly, the line between damages different in kind and those different only in degree from those suffered by the public at large has been difficult to draw. *See generally* Prosser, Law of Torts, *supra*, § 88 at 589–91. But the Court is persuaded that the commercial fishermen and clam diggers have sufficiently alleged "particular" damage to support their private actions.

■ The commercial fishermen and clam diggers in the present cases clearly have a special interest, quite apart from that of the public generally, to take fish and harvest clams from the coastal waters of the State of Maine. The injury of which they complain has resulted from defendants' alleged interference with *their* direct exercise of the public right to fish and to dig clams. It would be an incongruous result for the Court to say that a man engaged in commercial fishing or clamming, and dependent thereon for his livelihood, who may have had his business destroyed by the tortious act of another, should be denied any right to recover for his pecuniary loss on the ground that his injury is no different in kind from that sustained by the general public. Indeed, in substantially all of those cases in which commercial fishermen using public waters have sought damages for the pollution or other tortious invasion of those waters, they have been permitted to recover. Hampton v. North Carolina Pulp Co., 223 N.C. 535, 27 S.E.2d 538 (1943); Columbia River Fishermen's Protective Union v. St. Helens, 160 Or. 654, 87 P.2d 195 (1939); Strandholm v. Barbey, 145 Or. 427, 26 P.2d 46 (1933); Radich v. Frederickson, 139 Or. 378, 10 P.2d 352 (1932); Morris v. Graham, 16 Wash. 343, 47 P. 752 (1897). *See also* Carson v. Hercules Powder Co., 240 Ark. 887, 402 S.W.2d 640 (1966); Masonite Corp. v. Steede, 198 Miss. 530, 21 So.2d 463, 23 So.2d 756 (1945). *Contra,* Kuehn v. Milwaukee, 83 Wis. 583, 53 N.W. 912 (1892). These cases are no more than applications of the more general principle that pecuniary loss to the plaintiff will be regarded as different in kind "where the plaintiff has an established business making a commercial use of the public right with which the defendant interferes . . . ." Prosser, Law of Torts, *supra*, § 88 at 590. *See also* Restatement (Second) of Torts, *supra*, § 821C, comment h and illustration 11. In the view of this Court, to the extent their pecuniary losses can be established, the commercial fishermen and clam diggers should be entitled to recover for the same.

■ Unlike the commercial fishermen and clam diggers, the Old Orchard

---

2. Plaintiffs' principal claims sound in nuisance, and, although they also assert claims based on negligence, unseaworthiness, trespass and statutory violations, it is not suggested that their right to recover damages for pecuniary losses sustained by them as a result of the spill may differ according to the theory upon which they predicate defendants' liability.

Beach businessmen do not assert any interference with *their* direct exercise of a public right. They complain only of loss of customers indirectly resulting from alleged pollution of the coastal waters and beaches in which they do not have a property interest. Although in some instances their damage may be greater in degree, the injury of which they complain, which is derivative from that of the public at large, is common to all businesses and residents of the Old Orchard Beach area. In such circumstances, the line is drawn and the courts have consistently denied recovery. Smedberg v. Mosie Dam Co., *supra*; Bouquet v. Hackensack Water Co., 90 N.J.L. 203, 101 A. 379 (1917); Hohmann v. City of Chicago, 140 Ill. 226, 29 N.E. 671 (1892); Prosser v. Ottumwa, 42 Iowa 509 (1876); Willard v. Cambridge, 85 Mass. (3 Allen) 574 (1862). *Cf.* Whitmore v. Brown, 102 Me. 47, 65 A. 516 (1906). As Prosser states,

> Where . . . the pecuniary loss is common to the whole community, or a large part of it, as where a whole area of a town is cut off by a viaduct, or the draining of a good fishing lake affects all the fishing camps in the vicinity, it has been regarded as no different in kind from the common misfortune, and the private action cannot be maintained. Prosser, Law of Torts, *supra*, § 88 at 591.

*See also* Restatement (Second) of Torts, *supra*, § 821C, comment h and illustration 12; Prosser, Private Action for Public Nuisance, *supra* at 1015. In the view of this Court, the Old Orchard Beach businessmen can show no such distinct harm from the oil spill as to support their present action.

In accordance with the foregoing, it is ordered as follows:

(1) In Nos. 13–111 and 13–156 (consolidated), defendants' motions to dismiss the claims of the commercial fishermen are denied;

(2) In No. 13–120, defendants' motions to dismiss the claims of the commercial clam diggers are denied;

(3) In No. 13–115, defendants' motions to dismiss the claims of the Old Orchard Beach businessmen who are not the owners of real or personal property claimed to have been damaged by the oil spill are granted, and said claims are dismissed.

It is further ordered that since the remaining plaintiffs in No. 13–115 are included in the classes of plaintiffs certified in Nos. 13–111 and 13–156 (consolidated), and said actions involve common questions of law and fact, No. 13–115 is consolidated with Nos. 13–111 and 13–156 for all further proceedings. Fed.R Civ.P. 42(a).