616 F.2d 1222
 15 ERC 1314, 10 Envtl. L. Rep. 20,155
 NATIONAL SEA CLAMMERS ASSOCIATION and Gosta Lovgren, Appellants,
v.
CITY OF NEW YORK, Honorable Abraham Beame, United States
EnvironmentalProtection Agency, Russell E. Train,
Individually and as Administrator of theUnited States
Environmental Protection Agency, United States Army Corps
ofEngineers, Martin R.Hoffmann, Individually and as
Secretary of the United States Department of theArmy, New
York Department of Environmental Conservation, Ogden R.
Reid,Individually and as Commissioner of the New York
Department of EnvironmentalConservation, NewJersey
Department of Environmental Protection, David J. Bardin,
Individuallyand as Commissioner of New Jersey Department of
Environmental Protection,Bergen County Sewer Authority, the
Joint Meeting of Essex and Union Counties,Passaic
ValleySewerage Commissioners, Middlesex County Sewerage
Authority, the Linden RoselleSewerage Authority, Middletown
Sewerage Authority, West Long Beach SewerDistrict, County of
Westchester, Dept. of Environmental Fac., City of LongBeach
and City of GlenCove.
 No. 79-1360.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 16, 1979.
Decided Feb. 5, 1980.
 
 Edward C. German, Dean F. Murtagh, Robert P. Corbin (argued), LaBrum & Doak, Philadelphia, Pa., for appellants.
 Robert J. Del Tufo, U. S. Atty., Ralph A. Jacobs, Asst. U. S. Atty. (argued), Newark, N. J., for appellees, United States Environmental Protection Agency, Russell E. Train, United States Army Corps of Engineers and Martin R. Hoffmann.
 John G. Gilfillan, III (argued), Carella, Bain, Gilfillan & Rhodes, P. A., Newark, N. J., for appellee, Passaic Valley Sewerage Commissioners.
 Raymond G. Tomaszewski, (argued), Linden, N. J. for appellee, The Linden Roselle Sewerage Authority.
 George J. Minish (argued), Minish & Williams, West Orange, N. J., for appellee, The Joint Meeting of Essex and Union Counties.
 Menelaos W. Toskos (argued), Stephen J. Moses, Hackensack, N. J., for appellee, Bergen County Sewer Authority.
 Herbert F. Moore, Thomas P. Weidner (argued), Jamieson, McCardell, Moore, Peskin & Spicer, Trenton, N. J., for appellee, The City of Glen Cove.
 Allen G. Schwartz, Corp. Counsel, Stephen P. Kramer, Anthony Z. Scher, (argued), New York City, Philip R. Kaufman, Spotswood, N. J., for appellees, City of New York and Abraham Beame.
 David N. Hilgendorff, Corp. Counsel, Paula E. Kennedy, Deputy Corp. Counsel, City of Long Beach, Long Beach, N. Y., for appellee, City of Long Beach.
 Marvin J. Brauth, Wilentz, Goldman & Spitzer, Woodbridge, N. J., for appellee, Middlesex County Sewerage Authority.
 Before GIBBONS and HIGGINBOTHAM, Circuit Judges, and WEINER,* District Judge.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 This case comes before us on an appeal by plaintiffs National Sea Clammers Association and Gosta Lovgren from a final order dismissing their complaint. Plaintiffs are an association whose members make their living harvesting fish and shellfish from the water and ocean beds of the Atlantic Ocean near New York and New Jersey, and an individual similarly employed. They sue on behalf of themselves and a class comprising all others similarly situated. Defendants are various federal, state, and local officials and governmental departments that are charged with environmental protection or that are responsible for sewage treatment and disposal.
 
 
 2
 Plaintiffs' complaint alleged that defendants discharged or permitted the discharge of certain nutrient-rich sewage and toxic wastes into the Atlantic Ocean or its tributaries. It further alleged that in 1976 these discharges caused a massive and rapid growth of algae from Long Island to Cape May and extending from a few miles to twenty miles offshore. When this algal mass bloomed and died it allegedly settled on the ocean's floor, and its subsequent decomposition created an anoxia, an oxygen deficiency, in the water near the ocean's floor, which caused death and other adverse effects on marine life, particularly on those life forms, such as shellfish, ill able to flee the afflicted area. Plaintiffs alleged violations of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4361 (1976), the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 (1976 & Supp. I), the Marine Protection, Research and Sanctuaries Act of 1972, 33 U.S.C. §§ 1401-1444 (1976), the Rivers and Harbors Act of 1899, 33 U.S.C. § 407 (1976), the New York Environmental Conservation Law, N.Y. Environ. Conserv. § 1-0101 (McKinney 1973), the New Jersey Conservation and Development Law, N.J.S.A. 13:10-1 (1968), the federal common law of nuisance, and the fifth, ninth, and fourteenth amendments to the Constitution. Defendants moved for dismissal of all claims on the grounds that the court lacked subject matter jurisdiction, see Fed.R.Civ.P. 12(b)(1), or that the plaintiffs had failed to state a claim on which relief could be granted, see Fed.R.Civ.P. 12(b)(6). The complaint seeks injunctive relief, damages, mandamus to compel compliance with statutory duties, the imposition of fines and penalties for certain violations, the award to plaintiffs of one half of the fines assessed, and attorneys' fees. The trial court, holding that the submission of affidavits converted the motions into motions for summary judgment, granted defendants' motions as to each cause of action alleged. The complaint was dismissed, with prejudice, on all claims except for two said to arise under state law which were dismissed without prejudice. This appeal followed. We discuss separately the various legal theories which were pleaded and rejected.
 
 I. The Federal Water Pollution Control Act
 
 3
 The district court held that plaintiffs' failure to comply with the notice requirements of the Federal Water Pollution Control Act (FWPCAA)[1] deprived it of jurisdiction to entertain plaintiffs' claim that defendants violated their duties under that Act. Section 505(a) of the FWPCAA grants to any private citizen the right to sue to enforce compliance with effluent standards or limitations, 33 U.S.C. § 1365(a)(1), or to compel the Administrator of the Environmental Protection Agency to perform nondiscretionary duties. Id. § 1365(a)(2). Section 505(b) requires that in suits brought pursuant to subsection (a), 60 days' notice be given to specified parties to the suit. Id. § 1365(b).[2] Regulations promulgated by the Administrator define the type and specificity of the notice required. 40 C.F.R. § 135.3(A) (1979).
 
 
 4
 The district court held that the notice provision of section 505(b) was a jurisdictional prerequisite to suit, such that plaintiffs' failure to give notice barred suit under section 505(a). 33 U.S.C. § 1365(a). This court has rejected the theory that substantial compliance with the notice requirement suffices to give the court jurisdiction under section 505(a). We require instead strict adherence to the Act's notice provisions for suits brought pursuant to section 505(a). Loveladies Property Owners Ass'n v. Raab, 430 F.Supp. 276, 280-81 (D.N.J.1975), aff'd mem., 547 F.2d 1162 (3d Cir. 1976), cert. denied, 432 U.S. 906, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977). We do not depart from that holding. We note, however, that it would be entirely permissible for this court to adopt the pragmatic approach to interpreting the 60-day notice provision by which we would merely require that sixty days elapse prior to district court action on the complaint.[3] The purpose behind the notice provision, as the legislative history makes clear, was to afford the Environmental Protection Agency an opportunity to remedy the alleged violation prior to judicial action.[4] Thus, in the instant case, we could adopt the position that the failure of the Administrator to take remedial action during the sixty days after receiving notice of the suit permitted the suit to go forward in district court. We need not pass upon this proposition, however, because of our analysis of the independent significance of section 505(e), 33 U.S.C. § 1365(e), the savings clause of the citizens' suit provision.
 
 
 5
 The district court erred in holding that failure to comply with section 505(b), 33 U.S.C. § 1365(b), created an absolute bar to plaintiffs' suit to enforce the provisions of the Act. The citizens' suit provision of the FWPCAA was modeled on a similar provision in the Clean Air Act. Compare Clean Air Act § 304, 42 U.S.C. § 7604 (1976) with Federal Water Pollution Control Act § 505, 33 U.S.C. § 1365 (1976 & Supp. I). The slight difference in wording of the citizens' suit provision of each act reflects only the attempt by Congress to ensure that the FWPCAA would comply with the holding of the Supreme Court in the then-recent case of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).[5] The Senate version of the bill would have permitted any person to sue to enforce the terms of the Act.[6] The House bill would have limited citizens' suits narrowly to suits brought by two types of plaintiffs, citizens of the geographic area who were directly affected by the alleged violation, or groups of persons who, because actively engaged in the administrative process, had shown an interest in the area or the controversy.[7] The Conference Committee chose a middle path, limiting the section 505(a) remedy to citizens, but defining citizen broadly in section 505(g).[8] The intent of Congress was thus to provide generally for citizens' suits which would not be subject to the jurisdictional amount requirement and yet would provide for private attorney general enforcement to the maximum degree permitted by the Court's Sierra Club decision.[9]
 
 
 6
 It is clear, however, from the legislative history that the section 505(a) remedy is not exclusive. That section was intended to give federal courts jurisdiction over suits by private attorneys general seeking to enforce the provisions of the Act. Thus, the notice provision of section 505(b) only applies when a non-injured member of the public sues to enforce the Act. For the purposes of such a suit, Congress created the section 505(a) remedy, permitting suit not subject to the normally required minimum jurisdictional amount. See W. Rodgers, Environmental Law § 1.13 (1977) (discussing prototype citizens' suit provisions of Clean Air Act). The section 505(a) remedy, however, is not the exclusive vehicle for enforcement of the FWPCAA by private citizens. A private party who is injured by the alleged violation, as these plaintiffs allege they were, has an alternate basis for suit under section 505(e), 33 U.S.C. § 1365(e), and the general federal question jurisdiction of the Judicial Code, 28 U.S.C. § 1331 (1976). Section 505(e) is a savings clause that preserves all rights to enforce the Act or seek relief against the Administrator.[10] Coupled with the general federal question jurisdiction it permits this suit to be brought by these parties.[11] Moreover, unlike the private attorneys general provision of section 505(a), section 505(e) provides an independent remedy for injured parties unburdened by the notice requirements of section 505(b).
 
 
 7
 All parties and the court below acknowledge that the federal courts differ on the issue of whether section 505(e) authorizes private enforcement of the Act alternate to that authorized in section 505(a). The more persuasively reasoned cases, however, support our conclusion that section 505(e) was intended to preserve the rights of injured parties to sue to enforce the terms of the Act notwithstanding the expansion of remedies to non-injured parties contained in section 505(a). They recognize that the effect of section 505(a) is to give the district court jurisdiction over a new class of plaintiffs, while section 505(e) preserves jurisdiction over the preexisting right of injured parties to sue to enforce the Act.[12] By relying on the Clean Air Act, Congress made clear its intention to involve citizens in the enforcement of the Act.
 
 
 8
 The Second Circuit, in an opinion written by Judge Adams of this court sitting by designation, relied upon the Act's legislative history to support its conclusion that failure to give notice was not an absolute bar to suit under the FWPCAA.[13] Moreover, prior to the district court's opinion in the instant matter, Chief Judge Clarkson Fisher had adopted the section 505(e) jurisdiction analysis as well. In Township of Long Beach v. City of New York, 445 F.Supp. 1203 (D.N.J.1978), Chief Judge Fisher held that plaintiffs who had failed to comply with the section 505(b) notice requirement could sue in district court under section 505(e) and the general federal question jurisdiction, because they were injured parties suing on their own behalf and alleged damage in excess of the normal jurisdictional amount. Id. at 1209-10.[14] We must therefore reverse the holding of the district court that it lacked jurisdiction to entertain plaintiffs' claims under the FWPCAA.
 
 
 9
 We turn now to the issue of whether plaintiffs have a cause of action independent of that created in section 505(a) on which they may bring suit under section 505(e).
 
 
 10
 In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court established a four part test for finding an implied private cause of action.[15] Since Cort, the Supreme Court has further refined the test to be applied in determining whether a private right of action arises under any given federal statute.[16] In Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Court broadened the Cort test and held that Congress' failure expressly to consider private remedies did not preclude a holding that Congress intended to imply one. Id. at 694, 99 S.Ct. at 1956. More recently, in Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court noted that the Cort factors are merely relevant to the inquiry of whether a private remedy is implicit. Id. at 575, 99 S.Ct. at 2489. There, the Court stated that in Cort v. Ash,
 
 
 11
 the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.
 
 
 12
 Id. (emphasis added). Thus, the Court noted, the Cort factors are simply designed to guide the courts in determining legislative intent. Finally, this Term in Transamerica Mortgage Advisors, Inc. v. Lewis, --- U.S. ----, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Court applied the Touche Ross test, noting that the issue of "whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." Id. at ----, 100 S.Ct. at 245. It held that once legislative intent is discovered, countervailing considerations arising from strict application of the Cort factors become irrelevant. Id. at ---- - ----, 100 S.Ct. at 248-249. Bearing in mind that the single relevant inquiry is the intent of Congress, we turn to the Cort v. Ash factors to guide our analysis of the legislative intent.
 
 
 13
 Applying these factors to the instant case, we hold that a private cause of action is available to these plaintiffs under the FWPCAA.[17] First, we have already held that one of the purposes behind the passage of the FWPCAA was the protection of individuals from injury caused by the polluting activities of others. Thus, although the Act specifically grants a remedy to non-injured persons suing on behalf of the public, it is clear that the "class for whose especial benefit the statute was enacted" must have been individuals likely to suffer actual injury by the pollution.[18] Jurisdiction over suits by them is preserved by the savings clause. Although section 505(a) of the Act permits suits by private attorneys general who have suffered no direct economic harm, the statute clearly was intended to protect this particular class of actually injured persons as well. Plaintiffs are members of a class that takes its living from the sea and that is especially hurt by pollution. The general purpose clause of the Act includes a statement that the national goal shall be the attainment of that "water quality which provides for the protection and propagation of the fish, shellfish, and wildlife." 33 U.S.C. § 1251(a)(2). Although such protection will of course benefit the public at large, the general purpose clause supports our conclusion that the statute was intended to benefit the class of which plaintiffs are a part, and that a private remedy was intended to be created in their behalf.
 
 
 14
 As to the second factor in the Cort analysis, nothing in the legislative history suggests that the section 505(a) remedy created on behalf of private attorneys general was intended to be exclusive. Indeed, the savings clause broadly preserves all rights to sue "under any statute," language which given the legislative history of the section supports the existence of alternate remedies under the Act.[19] We reject the argument that the legislative history precludes finding an implied private right of action under the FWPCAA. The Report that accompanied the Senate's original version of the bill noted that the savings clause preserved rights to sue "under any other law." S.Rep. No. 92-414 at 81, Legislative History at 1499.[20] We are not persuaded that this paraphrase of the wording of the Act was intended to preclude the finding of a private remedy under the Act. The wording of the savings clause itself makes clear Congress' intent to preserve the rights of individuals to sue under any statute or the common law.
 
 
 15
 The third Cort factor was expanded by the Supreme Court last Term in Cannon. There the Court noted that
 
 
 16
 when (a private right of action) remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute.
 
 
 17
 441 U.S. at 703, 99 S.Ct. at 1961. Although not necessary to the accomplishment of the purposes of the FWPCAA, implying a private remedy on behalf of these plaintiffs certainly would be "helpful" to the effectuation of those purposes. Moreover, under the Cort analysis, a private remedy would be consistent with the purposes of the Act in general and with the purpose of protecting and encouraging propagation of marine life in particular. See 33 U.S.C. § 1251(a)(2) (general purpose clause).
 
 
 18
 Finally, the fourth inquiry in the Cort analysis also points to Congress' intent to permit this private cause of action. Far from being an area of traditional state concern, water pollution of the Atlantic Ocean is an interstate phenomenon of federal concern as to which an implied private remedy in the federal courts should not be denied.[21]
 
 
 19
 Thus, using the Cort factors as a guide, we have examined the statute and its legislative history in order to discover the legislative intent. See Transamerica Mortgage Advisors, Inc. v. Lewis, --- U.S. ----, ----, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). We therefore hold that Congress intended to permit the federal courts to entertain a private cause of action implied from the terms of the FWPCAA, preserved by the savings clause of the Act, on behalf of individuals or groups of individuals who have been or will be injured by pollution in violation of its terms.
 
 
 20
 Having so held, we reject the federal government defendants' sovereign immunity argument. The 1976 amendments to section 1331 of title 28 make clear that sovereign immunity has been waived in all suits by plaintiffs seeking injunctive relief against federal agencies or officers.[22] Whether damages can be recovered from the federal government is a separate question to which the Federal Tort Claims Act speaks. See Part VII, infra. We must therefore reverse the district court's dismissal of the FWPCAA claims.
 
 
 21
 II. The Marine Protection, Research & Sanctuaries Act
 
 
 22
 The Marine Protection, Research & Sanctuaries Act, 33 U.S.C. §§ 1401-1444 (1976) (MPRSA or Ocean Dumping Act) regulates the transporting and dumping of certain material into the open waters of the ocean. Id. § 1401. The Act defines the prohibited material to include dredged material, solid waste, sewage and sewage sludge,[23] and provides for an absolute cessation of dumping of sewage sludge by December 31, 1981.[24] Plaintiffs alleged four separate violations of the MPRSA,[25] all of which were dismissed on the ground that plaintiffs' failure to give notice barred suit in district court.
 
 
 23
 Like the FWPCAA, the MPRSA provides that citizens' suits may be brought after giving 60 days' notice[26] and contains a savings clause preserving all other rights to seek relief.[27] Although the wording of the citizens' suit provision of the MPRSA differs slightly from the FWPCAA provision, the jurisdictional analysis is the same.[28] Thus, because these plaintiffs have not complied with the notice requirement of the citizens' suit provision, their suit under section 1415(g)(1), which governs private attorney general suits by non-injured persons, is barred. However, because they allege that they have suffered direct injury by virtue of the defendants' violations of the Act, jurisdiction over their suit to enforce the provisions of the MPRSA is preserved by the savings clause. Moreover, a private cause of action to enforce the terms of the Act may be implied with respect to these injured plaintiffs. For the purposes of this analysis, the statutory provisions and legislative histories of the MPRSA and FWPCAA are virtually indistinguishable.[29] Thus we hold that the district court had jurisdiction to entertain this suit by these plaintiffs pursuant to the savings clause of the MPRSA and that a private cause of action to enforce the terms of the Act may be implied on behalf of these injured parties. We must therefore reverse the judgment of the district court dismissing the plaintiffs' MPRSA claims.
 
 III. The Rivers and Harbors Act (Refuse Act)
 
 24
 Plaintiffs also allege that federal defendant Army Corps of Engineers (ACE) and the state defendants violated section 13 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 407 (1976) (The Refuse Act). The Refuse Act makes it unlawful to discharge or permit to be discharged "any refuse matter of any kind or description whatever other than that flowing from streets and sewers . . . into any navigable water of the United States, or into any tributary (thereof)." Id. The district court dismissed this part of the complaint. We affirm.
 
 
 25
 The Rivers and Harbors Act is limited by its terms to enforcement by the United States Attorneys. 33 U.S.C. § 413 (1976). The majority of courts, and the courts of this circuit that have addressed this issue, have held that the Act precludes private suits and have thus refused to find an implied private cause of action. Red Star Towing & Transp. Co. v. Dept. of Transp., 423 F.2d 104, 105 (3d Cir. 1970) (Act enforced by penal sanctions only); Township of Long Beach v. City of New York, 445 F.Supp. 1203, 1211-12 (D.N.J.1978) (rejecting private cause of action); see Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 85-87 (2d Cir. 1972) (§ 413 delegates enforcement to Department of Justice; private party may not force prosecution under § 407); Parsell v. Shell Oil Co., 421 F.Supp. 1275, 1279-80 (D.Conn.1976) (Act protects public at large rather than private group of individuals), aff'd mem. sub nom. East End Yacht Club, Inc. v. Shell Oil Co., 573 F.2d 1289 (2d Cir. 1977); Anderson v. Norfolk & Western Ry., 349 F.Supp. 121, 122 (W.D.Va.1972) (§ 413 delegates enforcement to United States Attorneys; Act precludes qui tam enforcement). We adhere to the view that enforcement of the Refuse Act is limited to actions by the United States Attorneys.[30] Therefore the dismissal of plaintiffs' Refuse Act claims must be affirmed.IV. The Federal Common Law of Nuisance
 
 
 26
 In Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), a unanimous Supreme Court recognized that there is a federal common law cause of action to abate pollution of interstate ambient water, notwithstanding any relief available under the FWPCAA[31] and held that such a cause of action presented a federal question over which the district courts had section 1331 jurisdiction.[32] The district court refused to extend the cause of action to private litigants and dismissed plaintiffs' common law nuisance claim. In so holding, the court relied on holdings by other federal district courts that only governmental agencies can sue for relief from a public nuisance.[33] We hold that the common law nuisance remedy recognized in Illinois v. City of Milwaukee is available in suits by private parties.
 
 
 27
 The Court stated explicitly in Illinois that although both parties to that suit were governmental, "it is not only the character of the parties that requires us to apply federal law." Illinois v. City of Milwaukee, 406 U.S. at 105 n.6, 92 S.Ct. at 1393 n.6. Rather, the Court noted that "where there is an overriding federal interest in the need for a uniform rule of decision . . . we have fashioned federal common law." Id. In the instant case, plaintiffs are suing for damages to interstate ambient water, an issue as to which there is a clear and overriding federal interest in uniformity.[34] There is no question but that the interstate pollution here alleged is a problem calling for the application of a uniform federal standard. Relegating these litigants to possibly conflicting New York and New Jersey nuisance standards would ignore the clear intent of the Supreme Court to federalize those standards and would undermine that federal uniformity. These plaintiffs have sufficiently alleged pollution of interstate waters.[35] In order to give full effect to the federal common law of nuisance recognized in Illinois, private parties should be permitted, and indeed encouraged, to participate in the abatement of such nuisances. Courts have already extended the Illinois remedy to the federal government[36] and to municipalities,[37] and one district court has applied it on behalf of private litigants.[38] The effectuation of the purposes of the Illinois v. City of Milwaukee remedy and the fulfillment of the Supreme Court's intent in creating that remedy lead us to conclude that it is available to these private litigants who have been injured by the effects of the polluting activities of these defendants. While Illinois v. City of Milwaukee did not address this specific issue, we are convinced that the Court would apply the mode of analysis of Lincoln Mills[39] and would look to the Restatement formulation as an appropriate source for a federal rule. These plaintiffs have alleged sufficient individual damage to permit them to recover damages for this essentially public nuisance. The Restatement (Second) of Torts defines a public nuisance as "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B (1979). A private party may recover damages for a public nuisance if, while exercising the common right, he has suffered damages different in kind from those suffered by the public. Id. § 821C. The Restatement formulation encompasses the injury alleged in this case.[40] In Burgess v. M/V TAMANO, 370 F.Supp. 247 (D.Me.1973), the court held that
 
 
 28
 (i)t would be an incongruous result for the Court to say that a man engaged in commercial fishing or clamming, and dependent thereon for his livelihood, who may have had his business destroyed by the tortious act of another should be denied any right to recover for his pecuniary loss on the ground that his injury is no different in kind from that sustained by the general public.
 
 
 29
 Id. at 250. Thus, these plaintiffs, who have a right under federal common law to abate the pollution of interstate waters, have also suffered sufficient individual harm to sue for damages arising from that public nuisance. We therefore hold that the federal common law of nuisance may be enforced by private plaintiffs and that these plaintiffs have sufficiently alleged individual harm to permit recovery of damages for the public nuisance. Thus we must reverse the trial court's dismissal of the plaintiffs' federal common law nuisance claim.
 
 
 30
 V. Admiralty Jurisdiction and Maritime Torts
 
 
 31
 Plaintiffs also listed the federal admiralty law as an alternate basis for their tort claims. See U.S.Const. art. III, § 2; 28 U.S.C. § 1333 (1976); 46 U.S.C. § 740 (1976). The Supreme Court's traditional test for the existence of admiralty jurisdiction is two-fold: first, the traditional element of a maritime locality must be established; and second, a significant relationship to a traditional maritime activity must be proven. Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). The situs test may be no longer significant. See P. C. Pfeiffer Co. v. Ford, --- U.S. ----, ----, 100 S.Ct. 328, 332, 62 L.Ed.2d 225 (1979); Sea-Land Serv. v. Director, Office of Workers' Compens., 540 F.2d 629, 635-39 (3d Cir. 1976). That need not concern us here for both elements are satisfied by the allegations of the complaint. The situs of the algal bloom was the high seas. The nexus to maritime commerce is plain. See, e.g., Moore v. Hampton Roads Sanitation Dist. Comm'n, 557 F.2d 1030, 1034 (4th Cir. 1976) (harvesting oysters and clams, like fishing, is traditional maritime activity meeting nexus test of Executive Jet ), cert. denied, 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978); Union Oil Co. v. Oppen, 501 F.2d 558, 561 (9th Cir. 1974) (fishing industry is part of maritime activity); Potomac River Ass'n v. Lundeberg Md. Seamanship School, 402 F.Supp. 344, 358 (D.Md.1975) (injury to commercial fishing meets tests of Executive Jet ). Thus, this suit by plaintiffs for the tort of nuisance committed in the navigable waters and injuring those engaged in maritime commerce falls within the admiralty jurisdiction of the district court.[41]
 
 
 32
 Having held that the district court had jurisdiction in admiralty over plaintiffs' claims, we turn to whether plaintiffs have sufficiently alleged a cause of action sounding in maritime tort. One district court has recognized that a suit by clammers and fishermen for damages caused by an oil spill sounded in maritime tort and that recovery could be had for damages suffered by private plaintiffs alleging tortious invasions different from those suffered by the general public. Burgess v. M/V TAMANO, 370 F.Supp. 247, 249-50 (D.Me.1973). The court held that the pollution was an interference with plaintiffs' direct exercise of a public right to fish and dig for clams and thus caused them damages different in kind from those suffered by the general public. Id. at 250.
 
 
 33
 The district court dismissed this claim on the ground that plaintiffs' complaint was insufficient to allege a cause of action sounding in maritime tort. To the extent that plaintiffs have attempted to allege a maritime tort, it must be found in Count I of their complaint. That Count seeks recovery based on a theory of federal common law nuisance, rather than alleging specifically a maritime tort.[42] But the facts which support a Burgess-type admiralty tort claim are sufficiently alleged, and thus judged by the standards applicable to motions under Fed.R.Civ.P. 12(b)(6) the complaint is sufficient. Probably the substantive legal standards applicable to the maritime nuisance tort and the federal common law nuisance tort recognized in Illinois v. City of Milwaukee are the same, although on this record we need not fully explore that question. Nor need we decide whether the plaintiffs must at some point elect between admiralty and non-admiralty remedies. Finally, the district court did not, and thus we do not reach the question of whether the Limitation of Liability Act, 46 U.S.C. §§ 181-195 (1976), would be available to limit liability of the federal and municipal government defendants for damages to the value of the vessels used to barge the sewage and dredge spoils to the various dumping sites. We do hold that it was error to dismiss plaintiffs' maritime tort claims against all defendants at the pleading stage.
 
 VI. Federal Tort Claims Act
 
 34
 The district court held that the cause of action against federal agencies based on maritime tort was barred by plaintiffs' failure to comply with the requirements of the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (1976) (FTCA).[43] The terms of the FTCA define the limits of the court's jurisdiction to hear suits brought pursuant to the Act. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); Rosario v. American Export Isbrandtsen Lines, 531 F.2d 1227, 1231 (3d Cir.), cert. denied, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). Under the Act, claims must first be presented to the appropriate federal agency and no suit may be filed until six months thereafter. 28 U.S.C. § 2675. Regulations promulgated pursuant to the Act require that each claim so presented contain a demand for a sum certain. 28 C.F.R. § 14.2 (1978). These requirements were intended to create a system of prelitigation administrative consideration in order to settle claims and avoid unnecessary litigation.[44] Plaintiffs failed to observe the six months' waiting period. The district court held and we agree that it did not have jurisdiction to entertain the plaintiffs' claims under the FTCA.[45] This precludes a money damage recovery against federal agencies based on state law. Since we are remanding the federal common law nuisance claim we leave open the question, not addressed by the parties to this appeal, whether absent a reference in some statute waiving sovereign immunity for federal common law torts, monetary relief against the federal defendants is unavailable.
 
 
 35
 VII. The National Environmental Policy Act (NEPA)
 
 
 36
 The plaintiffs allege that the Environmental Protection Agency has violated the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-4361 (1976 & Supp. I), by failing to develop, plan, and coordinate federal functions, programs, and resources to the end that the Atlantic Ocean might exist without degradation, and that those who use the marine environment would be protected from risk to health or safety or other undesirable consequences. The district court held that the complaint failed to state a cause of action under NEPA. The issue is one of considerable complexity. The preparation of an environmental impact statement is required for every "major federal action ( ) significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C) (1976). The Administrator of the Environmental Protection Agency, however, is statutorily exempt from the environmental impact statement requirement. 33 U.S.C. § 1371(c)(1) (1976). Whether other substantive provisions of NEPA would afford relief is not entirely clear.[46] Further complicating the application of NEPA is the fact that some actions of the Agency are discretionary, 42 U.S.C. § 4331, and are reviewable only pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (1976). See Environmenal Def. Fund v. Corps of Eng., 470 F.2d 289, 298 n.14, 298-300 (8th Cir. 1972), cert. denied, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973). Because it does not appear at this stage of the case that a cause of action based upon NEPA would afford to the plaintiffs and the class they seek to represent any relief different from or more extensive than the relief which would be available under the claims we have already discussed, we decline at this time to pass upon the merits of the rather complex issues posed by NEPA. The district court will be free to reconsider the NEPA contentions in the light of the record developed on remand.
 
 VIII. State Tort Claims Acts
 
 37
 Moreover, to the extent that plaintiffs also failed to comply with the requirements of the New Jersey[47] and New York[48] tort claims acts, the dismissal of their claims under those acts must be affirmed. We do so, however, without prejudice to present compliance with the requirements of those statutes and suit thereunder in the future.[49]
 
 IX. Constitutional Claims
 
 38
 Plaintiffs also alleged violation of their fifth, ninth, and fourteenth amendment rights. They argued that there is a constitutional right to a pollution-free environment and that, by virtue of their special relationship to the environment, they can enforce this right. The district court rejected the constitutional argument and we affirm that holding. It is established in this circuit and elsewhere that there is no constitutional right to a pollution-free environment. See, e.g., Township of Long Beach v. City of New York, 445 F.Supp. 1203, 1212-13 (D.N.J.1978) (citing cases rejecting constitutional analysis). We hold that the district court properly rejected the plaintiffs' constitutional claims.
 
 X. Other Contentions
 
 39
 Defendants Passaic Valley Sewerage Commission (PVSC), Linden Roselle Sewerage Authority, and Middlesex County Sewerage Authority as separate grounds for affirmance plead that suits against them must be dismissed on eleventh amendment grounds. We reject that contention. These defendants are municipal corporations as to whom sovereign immunity under the eleventh amendment does not apply. See N.J.S.A. 40:14B-4 (1957); N.J.S.A. 58:14-2 (1957).
 
 XI. Conclusion
 
 40
 The judgment dismissing the complaint will be reversed to the extent that it dismissed plaintiffs' claims under the Federal Water Pollution Control Act, the Marine Protection, Research and Sanctuaries Act, their common law nuisance claims and their maritime tort claims. The district court's dismissal of the Refuse Act claim, the Federal Tort Claims Act and state tort claims act claims, and the constitutional claims will be affirmed. The district court's dismissal of the National Environmental Policy Act claim will be vacated and that claim remanded for consideration of the record developed on remand. The case will be remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 (1976 & Supp. I) was patterned after the Clean Air Act, 42 U.S.C. §§ 7401-7642 (1976). As originally enacted it was seriously deficient as a comprehensive regulatory scheme and was substantially amended in 1972. Federal Water Pollution Control Act Amendments of 1972, Pub.L. No. 92-500, reprinted in (1972) U.S.Code Cong. & Admin.News 951, codified in 33 U.S.C. §§ 1251-1376 (1976); see W. Rodgers, Environmental Law § 4.2 (1977). The 1972 amendments created the private right of action here in issue. Although the Act was further amended in 1977, those changes are not relevant to this litigation
 
 
 [2]
 Numerous environmental protection statutes contain citizens' suit provisions, each of which also contains a notice requirement similar to that found in section 505(b), 33 U.S.C. § 1365(b). E. g., Toxic Substances Control Act, §§ 20, 21, 15 U.S.C. §§ 2619, 2620 (1976); Surface Mining Control and Reclamation Act of 1977, § 520, 30 U.S.C. § 1270 (1976 & Supp. I); Marine Protection, Research and Sanctuaries Act of 1972, § 105, 33 U.S.C. § 1415 (1976); Deepwater Port Act of 1974, § 16, 33 U.S.C. § 1515 (1976); Safe Drinking Water Act, § 2(a), 42 U.S.C. § 300j-8 (1976 & Supp. I); Noise Control Act of 1972, § 12, 42 U.S.C. § 4911 (1976); Resource Conservation and Recovery Act of 1976, § 2, 42 U.S.C. § 6972 (1976 & Supp. I); Clean Air Amendments of 1970, § 12(a), 42 U.S.C. § 7604 (1976 & Supp. I)
 
 
 [3]
 See S.Conf.Rep. No. 92-1236, 92d Cong., 2d Sess. 145-46 (1972), reprinted in Legislative History of the Water Pollution Control Act Amendments of 1972, at 328-29 (1973) U.S.Code Cong. & Admin.News 1972 3668 (hereinafter Legislative History ) (Senate version, adopted in relevant part by Conference Committee, would require that "no action on a suit may begin for 60 days following notification"). Thus, it appears that the Senate bill envisioned filing of a Complaint prior to the passage of 60 days and intended only to defer action on such a suit
 
 
 [4]
 S.Rep. No. 92-414, 92d Cong., 1st Sess. 79-80 (1972), reprinted in Legislative History at 1497-98; see W. Rodgers, Environmental Law § 1.13 (1976) (discussing prototype citizens' suit provision of Clean Air Act)
 
 
 [5]
 In Sierra Club, the Supreme Court analyzed the requirement of standing in the context of litigation by environmental groups pursuant to section 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (1976). The Court held that such an environmental group would have standing if it could allege an adverse effect on its interests, whether economic, aesthetic, conservational or recreational. 405 U.S. at 738, 92 S.Ct. at 1367. The legislative history of the FWPCAA is replete with references to the Sierra Club decision and the issue of whether the general language of the Clean Air Act's citizens' suit provision would withstand judicial scrutiny. See notes 8-9 infra and accompanying text
 
 
 [6]
 The Senate bill provided that "any person" could commence a civil action to enforce the terms of the Act "without regard to the amount in controversy or the citizenship of the parties." S. 2770, 92d Cong., 1st Sess. § 505(a) (1971) reprinted in Legislative History at 1703-04. The accompanying committee report likewise employed broad phrasing. See S.Rep. No. 92-414, 92d Cong., 1st Sess. 79 (1971), reprinted in Legislative History at 1497 ("(a)nyone may initiate a civil suit against" specified parties for specific violations)
 
 
 [7]
 The House bill provided
 Sec. 505. (a) . . . any citizen may commence a civil action on his own behalf . . .
 (g) For the purposes of this section the term 'citizen' means (1) a citizen (A) of the geographic area and (B) having a direct interest which is or may be affected, and (2) any group of persons which has been actively engaged in the administrative process and has thereby shown a special interest in the geographic area in controversy.
 H.R. 11896, 92d Cong., 2d Sess. §§ 505(a), 505(g) (1972), reprinted in Legislative History at 1073, 1077.
 
 
 [8]
 The final form of the bill reflects the Conference Committee's changes. See 33 U.S.C. § 1365(g). The Conference Report notes that the change complies with the Sierra Club requirements. S.Conf.Rep. No. 92-1236, 92d Cong., 2d Sess. 145-46 (1972), reprinted in Legislative History at 328-29. Senator Muskie's somewhat fuller description of the Conference agreement noted that:
 The Conference agreed to define a citizen, for purposes of the citizen suit section of the water bill, as a "person or persons having an interest which is or may be adversely affected."
 Legislative History at 179 (prepared statement of Sen. Muskie) E.g., Oct. 4, 1972).
 
 
 [9]
 The legislative history reveals numerous examples of this intent of Congress. E.g., S.Conf.Rep. No. 92-1236, 92d Cong., 2d Sess. 145-46 (1972), reprinted in Legislative History at 328-29; 118 Cong.Rec. 33752, reprinted in Legislative History at 179 (prepared statement of Sen. Muskie) (Oct. 4, 1972); 118 Cong.Rec. 33756, reprinted in Legislative History at 249-50 (remarks of Rep. Dingell) (Oct. 4, 1972). Moreover, although the passage of the House version preceded the Sierra Club decision, some representatives argued that the private attorney general theory intended to be adopted called for wording of the section identical to that found in the Clean Air Act. H.R.Rep. No. 92-911, 92d Cong., 2d Sess. 407-09, reprinted in Legislative History at 876-78 (additional views of Rep. Bella S. Abzug and Rep. Charles B. Rangel) (describing House version as unnecessarily limited); 118 Cong.Rec. 10771-72, reprinted in Legislative History at 671-73 (remarks of Rep. McCloskey) (Mar. 29, 1972) (offering amendment similar to that ultimately adopted at Conference); see H.R.Rep. No. 92-911, 92d Cong., 2d Sess. 133-34, reprinted in Legislative History at 820-21 (endorsing private attorneys general concept)
 
 
 [10]
 Section 505(e) provides:
 Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).
 33 U.S.C. § 1365(e).
 
 
 [11]
 Under the section 505(e) and 28 U.S.C. § 1331 analysis, the plaintiffs, of course, remain subject to the jurisdictional amount requirement except with respect to their claim for injunctive relief against federal officers
 
 
 [12]
 Natural Resources Defense Council, Inc. v. Train, 166 U.S.App.D.C. 312, 319-320, 510 F.2d 692, 699-700 (D.C.Cir. 1974); see Natural Resources Defense Council v. Callaway, 524 F.2d 79, 83-84 (2d Cir. 1975) (60-day notice provision is not absolute bar to suit); Conservation Soc'y of S. Vt., Inc. v. Sec'y of Transp., 508 F.2d 927, 938 & n.61, 938-39 (2d Cir. 1974) (same; provision intended to create additional remedy), vacated, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975) (vacated and remanded for consideration of effect of statutory amendments on issue of preparation of environmental impact statement); Township of Long Beach v. City of New York, 445 F.Supp. 1203, 1208-10 (D.N.J.1978) (finding jurisdiction under 28 U.S.C. § 1331 gives effect to savings clause)
 We therefore decline to follow the Seventh Circuit's opinion in City of Highland Park v. Train, 519 F.2d 681, 690-91 (7th Cir. 1975), on which the district court relied. The Highland Park court's strict reading of the 60-day notice requirement of the Clean Air Act's citizens' suit provision does not persuade us with respect to our savings clause analysis. See id. at 693 (rejecting Clean Air Act citizens' suit provision's savings clause analysis); cf. West Penn Power Co. v. Train, 522 F.2d 302, 307 & n.20 (3d Cir. 1975) (district court's literal reading of Clean Air Act's 60-day notice requirement not raised on appeal). We recognize instead the intent of Congress to create a remedy for a new class of plaintiffs while preserving in section 505(e) those preexisting rights of injured individuals to enforce the Act.
 
 
 [13]
 Conservation Soc'y of S. Vt., Inc., v. Sec'y of Transp. 508 F.2d 927, 938 & n.62, 938-39 (2d Cir. 1974) (§ 1365(b) absolute bar analysis is "crabbed construction . . . which . . . fails to account for § 1365(e)"), vacated, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975) (vacated for consideration of statutory issue of preparation of environmental impact statement). The court assumed arguendo that it had section 505(e) jurisdiction but denied relief on the merits. Id
 
 
 [14]
 Nor does our affirmance of the Loveladies decision bar today's holding. See Loveladies Property Owners Ass'n v. Raab, 430 F.Supp. 276, 280-81 (D.N.J.1975), aff'd mem., 547 F.2d 1162 (3d Cir. 1976) (failure to give notice bars suit under § 505(a)), cert. denied, 432 U.S. 906, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977). As Chief Judge Fisher noted in Township of Long Beach, the section 505(e) argument was not raised in Loveladies, and it is questionable whether the plaintiff there had suffered damage in excess of the required $10,000 amount. See Township of Long Beach v. City of New York, 445 F.Supp. at 1209 n.8
 
 
 [15]
 422 U.S. at 78, 95 S.Ct. at 2088. The factors referred to in Cort are:
 First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
 Id. (emphasis in original).
 
 
 [16]
 Transamerica Mortgage Advisors, Inc. v. Lewis, --- U.S. ----, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)
 
 
 [17]
 We have already held that the district court had jurisdiction to entertain plaintiffs' suit pursuant to section 505(e) of the Act, 33 U.S.C. § 1365(e), and the general federal question jurisdiction, 28 U.S.C. § 1331. Separate analysis of jurisdiction and the merits of the cause of action is required by cases such as Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [18]
 In Cannon, the Court looked to the language of the statute to identify the class intended to be benefitted by the legislation, contrasting such a statute with those intended to benefit the public at large. Cannon v. Univ. of Chicago, 441 U.S. 677, 690, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979)
 
 
 [19]
 We are not persuaded that exclusivity of the section 505(a) remedy is supported by the Senate's rejection of a class action mechanism. S.Rep. No. 92-414 at 81, Legislative History at 1499 (§ 505 does not authorize class actions; intended to avoid Fed.R.Civ.P. 23 problems); see City of Evansville v. Ky. Liquid Recycling, 604 F.2d 1008, 1014 (7th Cir. 1979) (§ 505 does not authorize class action or suit for damages)
 
 
 [20]
 The Seventh Circuit, addressing the issue of whether there was an implied private cause of action for damages under the FWPCAA, was persuaded that the Senate Report evidenced Congress' intent that no remedy other than that provided for in section 505(a) be implied from the FWPCAA. City of Evansville v. Ky. Liquid Recycling, 604 F.2d 1008, 1018-19 (7th Cir. 1979). We are not persuaded that the language of the Senate Report establishes that the savings clause precludes finding an implied private cause of action under the Act on behalf of these plaintiffs
 
 
 [21]
 In Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), a unanimous Supreme Court recognized that there is a federal common law cause of action to abate pollution of interstate ambient water, notwithstanding the relief available under the FWPCAA. Id. at 103-05, 92 S.Ct. at 1392-1394. In Part IV, infra, we address this reliance on the federal common law of nuisance in the water pollution context
 
 
 [22]
 See Act of October 21, 1976, Pub.L.No.94-574, currently codified at 5 U.S.C. §§ 702, 703 (1976) and 28 U.S.C. §§ 1331, 1391 (1976)
 
 
 [23]
 33 U.S.C. § 1402(b). The Act also defines "ocean waters" as "those waters of the open seas lying seaward of the base line from which the territorial sea is measured." Id. § 1402(c). The Act does not apply to outfall structures regulated by the FWPCAA or the Refuse Act. Id. § 1402(f)
 
 
 [24]
 Id. § 1412a(a) (1976 & Supp. I). The Act defines sewage sludge to include
 any solid, semisolid, or liquid waste generated by a municipal waste-water treatment plant the ocean dumping of which may unreasonably degrade or endanger human health, welfare, amenities, or the marine environment, ecological systems, or economic potentialities.
 Id. § 1412a(b).
 
 
 [25]
 Count I of the Complaint alleged that federal defendants Environmental Protection Agency (EPA) and Army Corps of Engineers (ACE) failed to enforce the provisions of the Act, that the Secretary of the Army and the ACE negligently conducted dredging and dumping operations, and that the state defendants transported and dumped sewage in violation of the Act. Count III alleged that EPA and the Administrator of EPA and ACE and the Secretary of the Army failed to carry out their duties under the Act
 
 
 [26]
 The citizens' suit section of the MPRSA, 33 U.S.C. § 1415(g), provides in relevant part that, subject to the notice requirement, id. § 1415(g)(2), "any person may commence a civil suit on his own behalf to enjoin any person" acting in violation of the terms of the Act. Id. Other limitations upon the instituting of citizens' suits are directed toward the avoidance of duplicative litigation and are not relevant to this suit. See id. § 1415(g)(2)
 
 
 [27]
 Id. § 1415(g)(5). The savings clause provides
 (5) The injunctive relief provided by this subsection shall not restrict any rights which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or limitation or to seek any other relief . . .
 Id.
 
 
 [28]
 Compare 33 U.S.C. § 1365(a) (any citizen may sue) with id. § 1415(g)(2) (any person may sue). The legislative history of the MPRSA is less clear than that of the FWPCAA, although the citizens' suit provision appears to have been patterned on the Clear Air Act formulation, as was the provision found in the FWPCAA
 
 
 [29]
 Indeed, the MPRSA language, if anything, is broader than that of the FWPCAA. See Part I supra (legislative history and statutory analysis of FWPCAA). Other courts, including the district court which ruled on this case do not analyze the MPRSA and FWPCAA separately, holding that the Acts are virtually identical in this regard. E.g., Township of Long Beach v. City of New York, 445 F.Supp. 1203, 1210-11 (D.N.J.1978); Save Our Sound Fisheries Ass'n v. Callaway (SOSF II), 429 F.Supp. 1136, 1140-42 (D.R.I.1977)
 
 
 [30]
 We reject the argument that the court should imply a private cause of action in cases in which the United States Attorney is not in a position to enforce the terms of the Act. See NRDC v. Grant, 355 F.Supp. 280, 290 (E.D.N.C.1973) (finding private cause of action because U.S. Attorney serving as counsel for defendants). The NRDC v. Grant decision, finding an implied private cause of action because the United States Attorney was involved as counsel for the federal government defendants, does not persuade us that a private remedy should be implied. That decision was based upon an analogy to two provisions of the Rivers and Harbors Act which have generally been interpreted to permit a private cause of action. Id. The argument that the conflicting enforcement and defense roles of the United States Attorney support the implied private remedy has been explicitly rejected by this court. Red Star Towing & Transp. Co. v. Dept. of Transp., 423 F.2d 104, 105 (3d Cir. 1970); see Township of Long Beach v. City of New York, 445 F.Supp. 1203, 1211-12 (D.N.J.1978) (no private remedy even if federal government is defendant; rejecting Grant analysis); Loveladies Property Owners Ass'n v. Raab, 430 F.Supp. 276, 281 (D.N.J.1975) (no implied private remedy under § 407; relying on Red Star Towing ), aff'd mem., 547 F.2d 1162 (3d Cir. 1976), cert. denied, 432 U.S. 906, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977)
 
 
 [31]
 406 U.S. at 103-05, 92 S.Ct. at 1392-1394. The court held that the relief available under the FWPCAA is not an exclusive remedy. Id. at 104, 92 S.Ct. at 1393. In the private enforcement context, this holding probably is statutorily compelled. The FWPCAA provides for injunctive relief and the assessment of civil penalties, but does not create a cause of action for damages. The savings clause of the citizens' suit provision, which preserves all rights of litigants to sue under any statute or common law, has the effect of preserving these plaintiffs' rights to sue for damages under the remedy created in Illinois v. City of Milwaukee. See 33 U.S.C. § 1365(e)
 Since Illinois v. City of Milwaukee was decided, the FWPCAA has been amended twice, but these amendments do not suggest that Congress intended to preempt the federal nuisance remedy. The Seventh Circuit, in deciding an appeal from the remand of the Illinois case, analyzed the amended act to permit a claim for nuisance independent of the FWPCAA remedies. Illinois v. City of Milwaukee, 599 F.2d 151, 162 (7th Cir. 1979) (Act "suggests, if it does not require, the conclusion that Congress did not intend to preempt the federal common law of nuisance"), petition for cert. filed, --- U.S. ---- 100 S.Ct. 445, 62 L.Ed.2d 373, 48 U.S.L.W. 3155 (1979); see 33 U.S.C. § 1370 (state authority to enforce more stringent limitations); id. § 1371 (chapter shall not be construed to limit or impair authority of officers or agencies). Moreover, the Seventh Circuit relied upon the explicit language of the savings clause in reaching that conclusion. That clause preserves all remedies under "any statute or common law." 33 U.S.C. § 1365(e); see S.Rep.No. 92-414 at 81, reprinted in Legislative History at 1499 ("Compliance with (the) . . . Act would not be a defense to a common law nuisance action for damages."). There is no suggestion that "common law" was intended to be limited to state rather than federal common law. We thus agree that the amended Act does not preclude an independent nuisance remedy.
 
 
 [32]
 406 U.S. at 105, 92 S.Ct. at 1393; 28 U.S.C. § 1331 (1976); see Illinois v. City of Milwaukee, 599 F.2d 151, 162-63 (7th Cir. 1979), petition for cert. filed, --- U.S. ----, 100 S.Ct. 445, 62 L.Ed.2d 373, 48 U.S.L.W. 3155 (1979)
 
 
 [33]
 See Parsell v. Shell Oil Co., 421 F.Supp. 1275, 1281 (D.Conn.1976), aff'd mem. sub nom. East End Yacht Club Inc. v. Shell Oil Co., 573 F.2d 1289 (2d Cir. 1977); Committee for Consid. of Jones Falls Sew. Sys. v. Train, 375 F.Supp. 1148 (D.Md.1974), aff'd on different but not inconsistent grounds, 539 F.2d 1006 (4th Cir. 1976)
 
 
 [34]
 In reaching the conclusion that federal common law may be fashioned to deal with federal rights, and that ambient air or water are interstate problems as to which there is a federal common law remedy, the Supreme Court relied upon Textile Workers v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957) and Texas v. Pankey, 441 F.2d 236, 240-41 (10th Cir. 1971). Illinois v. City of Milwaukee, 406 U.S. at 103 & n.5, 92 S.Ct. at 1392 n.5
 
 
 [35]
 Failure sufficiently to allege interstate effects has proved fatal to plaintiffs seeking to base their suits on the federal common law nuisance remedy. Reserve Mining Co. v. EPA, 514 F.2d 492, 520 (8th Cir. 1975); Committee for Consid. of Jones Falls Sew. Sys. v. Train, 539 F.2d 1006, 1009 (4th Cir. 1976). In Illinois v. City of Milwaukee, the immediate issue of concern was the need to apply uniform federal law where the polluting activities of one state caused harm to another state. The need for uniformity, however, is no less a concern where individuals are harmed by the polluting activities of states or their subdivisions. To hold that plaintiffs may not avail themselves of this remedy is to leave open the possibility that this pollution will continue unabated and that the damages suffered by these individuals will be unremedied. Such a result was surely not intended by the unanimous Court in Illinois v. City of Milwaukee
 
 
 [36]
 United States v. Stoeco Homes, Inc., 498 F.2d 597, 611 (3d Cir. 1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); United States v. Ira S. Bushey & Sons, 346 F.Supp. 145, 149-50 (D.Vt.1972), aff'd mem., 487 F.2d 1393 (2d Cir. 1973), cert. denied, 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1974)
 
 
 [37]
 City of Evansville v. Ky. Liquid Recycling, 604 F.2d 1008, 1018-19 (7th Cir. 1979)
 
 
 [38]
 In Byram River v. Village of Port Chester, 394 F.Supp. 618 (S.D.N.Y.1975), the court extended the Illinois v. City of Milwaukee remedy to (1) Byram River, (2) a private corporation, Byram River Pollution Abatement Association, (3) the Town of Greenwich, a municipal corporation, and (4) a private individual owning land on the river's bank. Id. at 622 (relying on Illinois v. City of Milwaukee and 28 U.S.C. § 1331)
 In Stream Pollution Control Board v. United States Steel Corp., 512 F.2d 1036 (7th Cir. 1975), the Seventh Circuit held that common law relief is available to a pollution control board, but denied the motion of a private individual to intervene on the ground that the federal common law nuisance suit was not a suit commenced to enforce compliance with an FWPCAA "standard, limitation or order." Id. at 1039-41, 1040 n.9; see 33 U.S.C. § 1365(b)(1)(B) (governing intervention). The court did not address the availability of the Illinois remedy to a private individual, but held that the remedy extended to the pollution control board because the "complaint raises substantial questions which only a federal court may finally answer." 512 F.2d at 1040. Although the Seventh Circuit has since questioned the analysis of the FWPCAA permit system in Stream Pollution, see United States Steel Corp. v. Train, 556 F.2d 822, 830 n.3 (7th Cir. 1977), that affects only the issue of whether under the Act, the private individual could intervene. In Potomac River Association v. Lundeberg Md. Seamanship School, 402 F.Supp. 344 (D.Md.1975), the court permitted private plaintiffs to sue for the maritime tort of nuisance without reference to a federal common law nuisance claim. Id. at 358-59; see Part V, infra.
 
 
 [39]
 Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957)
 
 
 [40]
 Illustration 11, explicitly included within the different in kind test, is indistinguishable from the facts of this suit. It states:
 
 
 [11]
 A pollutes public waters, killing all of the fish. B, who has been operating a commercial fishery in these waters, suffers pecuniary loss as a result. B can recover for the public nuisance
 Restatement (Second) of Torts § 821C, Illustration 11 (1979).
 
 
 [41]
 We need not consider plaintiffs' assertion that the court had jurisdiction independently under the Extension of Admiralty Act, 46 U.S.C. § 740 (1976). That Act was intended to broaden jurisdiction to cases over which jurisdiction would not have existed under the strict locality test employed prior to Executive Jet. The Act extends admiralty jurisdiction to injuries caused by a vessel on navigable waters the effects of which are felt on land
 
 
 [42]
 The confusion arises because the nuisance claim also requires a showing that these private individuals have suffered damages different in kind from those suffered by the general public. See Part IV, supra. In Burgess, the court held that the tort of nuisance could be a maritime tort and analyzed the complaint under an admiralty theory. See 370 F.Supp. at 250. The plaintiffs in Burgess did not raise, and the court did not address, the federal common law nuisance issue. Thus, the Burgess opinion does not persuade us that an allegation of the tort of nuisance as to which recovery is expressly based on the doctrine of federal common law nuisance may not also be liberally read as sounding in maritime tort
 
 
 [43]
 See 28 U.S.C. § 2675 (six months must elapse following presentation of claim to federal agency before suit may be filed); 28 C.F.R. § 14.2 (1978) (claim must demand sum certain in damages)
 
 
 [44]
 Bialowas v. United States, 443 F.2d 1047, 1049-50 (3d Cir. 1971); see Pennsylvania v. Nat'l Ass'n of Flood Insurers, 520 F.2d 11, 19 (3d Cir. 1975) (sum certain requirement); Ryan v. United States, 457 F.Supp. 400, 402 (W.D.Pa.1978) (same)
 
 
 [45]
 We express no view as to whether the sum requested by plaintiffs was sufficiently certain, see Fallon v. United States, 405 F.Supp. 1320, 1322 (D.Mont.1976), or whether plaintiffs' claims against federal agencies and officials for negligent enforcement of various federal acts would be barred by the FTCA's exception for discretionary functions. See 28 U.S.C. § 2680(a) (1976)
 
 
 [46]
 Courts differ, for example, on the question of whether section 101 of NEPA, setting forth Congress' declaration of purpose, would afford such relief. Compare Calvert Cliffs' Coord. Comm. v. AEC, 146 U.S.App.D.C. 33, 38, 449 F.2d 1109, 1114 (D.C.Cir.1971) (§ 101 of NEPA is substantive) with Shiffler v. Schlesinger, 548 F.2d 96, 100-01 (3d Cir. 1977) (§ 101 lacks independent substantive impact)
 
 
 [47]
 New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-2 (1972). The statute provides that public entities may only be sued if a claim is presented within 90 days after the cause of action accrues and no court suit may be instituted prior to six months thereafter. Id. 59:8-8. The trial judge has discretion under the statute to expand the filing time from 90 days to one year if no substantial prejudice results. Id. 59:8-9
 
 
 [48]
 N.Y.General Municipal Law (McKinney) § 50-e (1977). The statute provides that notice of a claim must be filed within 90 days after the cause of action accrues, id., that suit may not be filed until 30 days have elapsed after the filing of the notice, id. § 50-i(1), and that no suit may be brought more than one year and 90 days after the accrual of the cause of action. Id. § 50-i(1) (c). A suit within the admiralty jurisdiction, however, is not subject to the requirements of the New York Tort Claims Act, Rogers v. City of New York, 46 Misc.2d 373, 259 N.Y.S.2d 604, 608-09 (N.Y.Sup.Ct.1965)
 
 
 [49]
 Plaintiffs' failure to comply with the requirements of the state tort claims statutes, however, only bars suit under those statutes. It does not preclude suit if an alternative basis for suit against the defendants is pleaded. The state tort claims acts may not preempt federal statutory or common law causes of action